**Benita SWANSON, Plaintiff,**

v.

**SENIOR RESOURCE CONNECTION, Defendant.**

**Case No. C–3–01–472.**

United States District Court, S.D. Ohio, Western Division.

Feb. 24, 2003.

Benita Swanson, Karen T Dunlevey, Bieser, Greer & Landis, Dayton, OH, Jennifer Lee Stueve, Bieser, Greer & Landis, Dayton, OH, for Plaintiff.

Thomas Lucyan Czechowski, Green & Green, Dayton, OH, for Defendant.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC.# 9)

RICE, Chief Judge.

This is an employment discrimination lawsuit that was originally filed in the Common Pleas Court of Montgomery County, Ohio, and removed to this Court on account of the Complaint (attached to Doc. # 1) stating a federal claim. (Doc. # 1.) *See* 28 U.S.C. § 1331 (federal question jurisdiction) & § 1441(a) & (b) (general removal jurisdiction). The Plaintiff is Benita Swanson, and the Defendant is Swanson's former employer, Senior Resource Connection ("SRC"). Four counts (designated as "Claims for Relief") were plead in the Complaint. Swanson's First Claim for Relief arises under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). Her Second Claim for Relief arises under the discrimination law of Ohio, Ohio Rev.Code § 4112.01, *et seq.* This count actually alleges two different theories of discrimination: discrimination because of a disability and discrimination in the form of SRC's alleged failure to accommodate said disability. Swanson's Third Claim for Relief arises under Ohio public policy. Her Fourth Claim for Relief states a claim for intentional infliction of emotion distress, under the common law of Ohio.

SRC now moves for summary judgment. (*See* Doc. # 9.) For the reasons which follow, the Court will SUSTAIN SRC's Motion as to Swanson's Fourth Claim for Relief, and OVERRULE same as to the First and Second Claims for Relief. Swanson has stated at page 19 of her *Memorandum in Opposition* (Doc. # 14) that she is withdrawing her Third Claim for Relief, arising under Ohio public policy, and will be filing a stipulation of dismissal forthwith. Accordingly, the Court need not rule on this claim, but will direct Swanson to proceed with said filing as stated.

I. *Factual Background* [1]

Benita Swanson was hired by SRC in 1998 as a volunteer coordinator. Her im-

1. For purposes of ruling on the Defendant's    Motion for Summary Judgment, the Court

mediate supervisor was Nanci McGuire. The Director of Human Resources was Mary Carl. As of August of 2000, she was receiving positive job performance evaluations and regular merit increases. (Carl Depo. at 78–83.) Notwithstanding her adequate job performance, between April 5, 1999, and January of 2000, Swanson was charged with eight excessive absences by SRC, necessitating counseling from McGuire on the matter of improving her attendance record. (McGuire Aff., Doc. # 9 at Ex. A., ¶ 7.) In early 2001, Swanson began experiencing symptoms of fatigue, stress, weight loss, lack of motivation and sleeping disruptions, all of which had an impact on her work. (Swanson Aff., Doc. # 14 at Ex. 2, ¶ 1.) On January 3, 2001, McGuire issued Swanson a written reprimand because of continued absenteeism and tardiness. (McGuire Aff. ¶ 9.) On April 18, 2001, McGuire issued her another written reprimand, noting therein that since February 1, she (Swanson) had been tardy nineteen times and absent without approval seven times, and that, as a result, her next infraction would constitute grounds for her termination. (Id. ¶ 10.)

On April 19, 2001, Dr. Meenakshi Patel diagnosed Swanson as suffering from depression. (Patel Aff., Doc. # 14 at Ex. 4, ¶ 5.) It was Dr. Patel's professional opinion that Swanson's depression substantially limited her ability to sleep and work, but that with treatment, her difficulties could be alleviated. (Id. ¶¶ 9 & 10.) Dr. Patel prescribed medication for Swanson, scheduled a follow-up appointment for May 7, and directed her to take leave from work during the two-week interim. (Id. ¶¶ 6 & 7.) On April 20, Swanson arrived on time to work and requested two week's leave as directed by Dr. Patel. (Swanson Aff. ¶¶ 3 & 4.) She completed the necessary paperwork, and was informed by Carl that she would be granted leave through May 7, 2001, as allowed by the FMLA. (Id. ¶ 4; see also Doc. # 14 at Ex. 7.) The FMLA leave form which Carl issued to Swanson indicated that leave was being granted so that Swanson could care for "a serious health condition," but that she would be required to furnish a medical certification of her condition by May 7. (Doc. # 14 at Ex. 7.)

On April 24, 2001, Swanson received a letter from Carl informing her that she had been terminated, effective April 20. (Swanson Aff. ¶ 5; see also Doc. # 14 at Ex. 6.) Carl informed Swanson that SRC was terminating her because she had not reported absent from work on April 23 or made arrangements for how her work assignments then in progress were to be handled. (Swanson Aff. ¶ 5; Doc. # 14 at Ex. 6.) According to Carl, Swanson was "required" under the FMLA to call SRC on her first day of FMLA leave to inform it that she would not be in, and her failure to do so "negate[d] the FMLA authorization." (Swanson Aff. ¶ 5; Doc. # 14 at Ex. 6.) Carl also indicated that at the time she (Carl) authorized the FMLA leave, she had been unaware of Swanson's most recent reprimand from McGuire, and that FMLA leave could not be authorized "after the fact" without a physician's full authorization form completed in advance. (Swanson Aff. ¶ 5; Doc. # 14 at Ex. 6.) At the time in question, Swanson was unaware of any SRC policy requiring an employee to call in on his or her first day of FMLA leave to state that he or she would not be in, and she does not remember anyone at SRC instructing her to do as much. (Swanson Aff. ¶ 2.)

On advice of family and friends, who had warned of possible negative side effects, Swanson was hesitant to take the medi-

---

will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiff, who is the non-moving party.

cation she had been prescribed until she had had the opportunity to discuss these issues with Dr. Patel. (*Id.* ¶ 11.) Left unemployed, however, she was unable to afford continued health care insurance coverage and, consequently, treatment by Dr. Patel. (*Id.* ¶ 12.)

After discussing the standard for ruling on motions for summary judgment, the Court will consider the arguments of the parties.

## II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material . fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there

are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## III. *Analysis*

The Court will discuss the parties' arguments pertaining to the individual counts in turn, beginning with that brought under the FMLA.

### A. *FMLA (First Claim for Relief)*

The FMLA provides eligible employees with up to twelve weeks of leave during any calendar year to care for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It was this provision which Swanson invoked in requesting two week's leave from April 23 to May 7, 2001. The term "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11). Regulations promulgated by the Department of Labor under this statute, *see id.* § 2654, state that "continuing treatment by a health care provider" is demonstrated by

> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> * * *
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2) (2002).

The phrase "functions of the position of such employee" is defined in the regula-

tions to mean the "essential functions." *Id.* § 825.115. Where an employee must be absent from work to receive medical treatment for a serious health condition, that employee "is considered to be unable to perform the essential functions of the position during the absence for treatment." *Id.*[2]

An employer is allowed to require that any leave requested for purposes of caring for a serious health condition be supported by a certification from the employee's health care provider. 29 U.S.C. § 2613(a). If desired, the employer may also request a second opinion, at its own expense. *See id.* § 2613(c). If those two opinions conflict, it may pay for a third opinion, which shall be final and binding on both it and the employee. *See id.* § 2613(d).

The law prohibits an employer from denying an employee the right to exercise her rights thereunder, *id.* § 2615(a)(1), and has been construed to prohibit, among other things, retaliation against an employee for her attempt to take such leave. *See Chandler v. Specialty Tires of America (Tennessee), Inc.,* 283 F.3d 818, 825 (6th Cir.2002).

In her First Claim for Relief, Swanson alleges that SRC, by terminating her employment, "unlawfully interfered with, restrained and denied [her] rights to a leave of absence under the FMLA." (Compl.¶ 11.) In light of the facts adduced, it is evident that this claim asserts two distinct violations of the FMLA: *first,* that she was denied leave which should have been granted, and *second,* that SRC retaliated against her for attempting to take such leave. In its Motion, SRC submits arguments on both points, contending that she was not entitled to FMLA leave in the first instance (Doc. 39 at 7–12) and that, in any event, she was not terminated in retaliation for her attempt to do so. (*Id.* at 12.) Swanson's argument in her Memorandum in Opposition focuses on the alleged retaliatory nature of SRC's actions. (Doc. # 14 at 3–16.) Given Swanson's argument, it is clear that the Court should treat her FMLA claim as one based on a claim of retaliatory discharge, but because it is integral to the analysis, it will consider in the first instance whether Swanson was entitled to a two-week leave of absence.

■ Determining whether SRC denied Swanson her basic right to take FMLA leave is simply done. The Court need only ask whether she was both eligible for such, as contemplated by 29 U.S.C. § 2611(2), and entitled to such, as contemplated by § 2612(a)(1)(D). Determining whether SRC terminated Swanson in retaliation for her attempt to take two weeks of leave is slightly more involved, and requires the Court to apply, in the absence of direct evidence of retaliatory conduct, the *McDonnell Douglas* framework for analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, Swanson must first make a prima facie showing of discrimination. *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir.2001). To make out a prima facie claim of retaliation at the summary judg-

2. Arguably, this particular regulation renders the language of 29 U.S.C. § 2612(a)(1)(D) redundant, insofar as it collapses into a single element the statute's distinct required elements, to wit: (1) a "serious health condition"; and (2) a showing that because of said condition the "employee is unable to perform the functions of the position of such employee." Under the regulation, it appears that proof of (1) is determinative of (2). The Court will not deliberate on this, however, because Dr. Patel's affidavit statements are sufficient to give rise to a genuine issue of material fact as to whether Swanson was, objectively speaking, able to perform the essential functions of her job at the time she was terminated.

ment stage, Swanson must adduce facts giving rise to genuine issues as to whether: 1) she engaged in an activity protected by the FMLA; 2) her exercise of this right was known by SRC; 3) thereafter, SRC took an employment action adverse to her; and 4) there was a causal connection between the protected activity and the adverse employment action. *See Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

■ If she can make this prima facie showing, she creates a presumption that SRC unlawfully retaliated against her. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In that case, the burden of articulating "a legitimate, non-discriminatory reason" for its actions which adversely affected Swanson would fall on SRC. *See id.* at 506–07, 113 S.Ct. 2742 (citation omitted); *Skrjanc,* 272 F.3d at 315. If SRC would fail to meet its burden of production, the presumption created by Swanson's prima facie case would require a finding in her favor. *See Hicks,* 509 U.S. at 506, 113 S.Ct. 2742. If, however, SRC were to articulate a non-discriminatory reason for its actions, while an *inference* of discrimination might still be drawn from Swanson's prima facie evidence, the mandatory *presumption* of discrimination would drop from the case. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). It would then fall on Swanson to rebut SRC's proffered justification by showing that such was a pretext. *See Skrjanc,* 272 F.3d at 315. Generally, a plaintiff can meet this burden in one of three ways. To raise a genuine issue of material fact about the credibility of an employer's non-discriminatory explanation (i.e., to show pretext), the plaintiff must show by a preponderance of the evidence (1) that the proffered reason has no basis in fact, (2) that the proffered reason did

not actually motivate the employer to take the adverse action, or (3) that the proffered reason was insufficient to motivate the taking of the adverse action. *See Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

As noted, SRC argues as a threshold matter that Swanson was not entitled to FMLA leave. It also argues, in the alternative, that even if she could show that she was entitled to FMLA leave, and otherwise make out a prima facie claim of retaliation, it has articulated "a legitimate, non-discriminatory reason" for terminating her as of April 20, 2001. Swanson argues in response that she was entitled to FMLA leave, and that, in any event, SRC should be estopped from arguing otherwise, given that it expressly granted her such leave, expressly noting on the FMLA leave form that such was being granted so that she could care for a "serious health condition." She contends that she has adduced facts sufficient both for purposes of her prima facie case and for rebutting SRC's purported legitimate explanation for her termination, such that there are genuine issues of material fact requiring that summary judgment be denied.

■ Regarding whether it denied Swanson a right to FMLA leave, SRC does not question that she was an "eligible employee" under the FMLA. *See* 29 U.S.C. § 2611(2); 29 C.F.R. § 825.110 (2002). It argues at length, however, that she did not suffer from a "serious health condition" as defined by the FMLA, and that she was, therefore, not "entitled" to avail herself of rights arising thereunder. (*See* Doc. # 9 at 7–12; Def.'s Reply (Doc. # 15) at 1–3.) The Court finds that Swanson has adduced facts giving rise to genuine issues on this matter, and that summary judgment cannot be granted.

Dr. Patel states in her affidavit that on April 19, 2001, she diagnosed Swanson as suffering from depression and that this

condition "substantially limited" her ability to sleep and work. (Patel Aff. ¶¶ 4 & 9.) Viewing the facts in a light most favorable to Swanson, the statements of Dr. Patel create a genuine issue as to whether she was suffering from such a condition. Furthermore, because Swanson has adduced facts tending to demonstrate that Dr. Patel had placed her on a regimen of prescription medication and that it was her intent to continue seeing Dr. Patel for purposes of receiving treatment for her depression, genuine issues exist as to whether she was under the "continuing treatment" of her physician for a "serious health condition."

SRC stresses that prior to April 19, 2001, Swanson had never visited Dr. Patel, that Swanson was issued "sample" medications, not actual prescriptions, that Swanson had initiated the idea that Dr. Patel excuse her from work for two weeks, and that, ultimately, Swanson never took any of the medications nor returned to Dr. Patel for a follow-up visit. (Doc. # 9 at 4–5 & 7; Swanson Depo. at 65–66, 92, 94.) Since the Court must construe the facts, as well as all reasonable inferences which can be drawn therefrom, in a light most favorable to the non-moving party, when ruling on a motion for summary judgment, it is irrelevant for the time being whether Swanson had never before seen Dr. Patel, was given only samples, and had initiated the proposal that she be directed to take two week's leave from work. The fact remains that Dr. Patel diagnosed Swanson as suffering from depression and directed her to take two week's leave from work. SRC may challenge Dr. Patel's professional competence at trial, but it would be an abuse of discretion for the Court to dismiss the merits of her medical opinion at this stage of the litigation, merely because it was rendered after Swanson's "first visit" or because it was Swanson's own suggestion that she be directed to take a leave of absence. Furthermore, the argument that a physician's professional diagnosis is somehow diminished when she issues medication in sample form, as opposed to prescription form, makes little sense as a matter of law, medicine, or economics.[3] In any event, to the extent SRC intends to discredit the methods by which Dr. Patel chooses to introduce her patients to certain medications, it must do so at trial. Finally, Swanson has adduced facts tending to show that she was legitimately apprehensive about taking the medication without first returning to see Dr. Patel to ask about side effects, but that she was unable to do so because, having been fired, she could no longer afford insurance to pay for treatment. These facts trump, for purposes of ruling on summary judgment, the competing inference which SRC asks the Court to draw, that being that Swanson was not truly suffering a serious health condition at the time of her termination.

Pointing out that the Department of Labor regulations, set forth above, require a

---

**3.** The Court notes that a Department of Labor regulation states that "a regimen of continuing treatment," as used in 29 C.F.R. § 825.114(a)(2)(i)(B), includes "a course of prescription medication," but not a regimen of over-the-counter medications. 29 C.F.R. § 825.114(b) (2002). The Court's ruling on this matter is not inconsistent with this regulation, so the reasonableness of the regulation itself, or its application, need not be considered. "Sample" pharmaceuticals are no different than those offered via prescription, and it is common practice for physicians to have their patients try such before writing out complete prescriptions. (See, e.g., Patel Aff. ¶ 5.) This allows a physician and patient to work together to identify a suitable drug treatment while at the same time sparing both the patient and her insurer unnecessary costs. Pharmaceutical companies supply physicians with such "samples" for this very reason, and it is splitting hairs for SRC to argue that the lack of an actual prescription, if that is even the case (see Swanson Depo. at 94), negates a plaintiff's ability to show she received a course of "prescription medication."

plaintiff to demonstrate that she was incapacitated, and thus unable to work or perform regular daily activities for a period of more than three consecutive calendar days, SRC further argues that summary judgment is warranted because Swanson cannot show that she was incapacitated in this fashion. (Doc. # 9 at 9–10.) In support of this argument, SRC notes that on April 20, 2001, Swanson continued to work for the remainder of the day, even after she had been approved for FMLA leave. (*See* Swanson Depo. at 98.) Moreover, it notes that during the two-week period between April 23 and May 7, Swanson attended classes at Sinclair Community College and did homework, and that at some point in time after her termination she found employment at Sinclair, where she has not had any difficulties with absenteeism. (*See id.* at 99–100, 106–07.)

Again, the Court finds that SRC's argument is not well taken at the summary judgment stage of the litigation. Four reasons guide the Court in its decision making. *First,* Swanson's period of leave was to begin on April 23, and the regulations make it clear that an employee need only be unable to work "during the absence for treatment." 29 C.F.R. § 825.115. Therefore, what she did on April 20, before her scheduled absence, is irrelevant. *Second,* Dr. Patel's opinion that she was "substantially limited" in her ability to "cognitively function at work," during her intended period of FMLA leave (Patel Aff. ¶ 9), is enough to create a genuine issue of material fact and survive summary judgment.

*Third,* it is, in a sense, disingenuous for SRC to point to Swanson's actions after it terminated her to prove she was not incapacitated or otherwise unable to perform the essential functions of her job. By its argument, SRC wants to bind Swanson to the strictures of the FMLA, even though it terminated her and thus released her from any duty thereunder. Yet, the fact of the matter is, as soon as SRC terminated Swanson, she was no longer bound by the terms of the FMLA. She could not have been, as she was no longer an employee entitled to any protections thereunder. Thus, SRC cannot hold Swanson accountable under the very law the benefits of which it denied to her, and, for purposes of ruling on its Motion for Summary Judgment, the Court will discount its invocation of the Department of Labor regulations to the extent they are invoked as an affirmative defense to Swanson's claim that she was entitled to FMLA benefits.[4]

*Fourth,* SRC's entire FMLA argument, based as it is on its own, lay interpretation of Swanson's health, is questionable as a

---

**4.** The Court's ruling on this point relates to Swanson's argument that SRC should be estopped from arguing that she did not suffer from a serious health condition. Taken without qualification, such an action by the Court would be too sweeping. As was its right to do, SRC conditioned final FMLA leave approval on Swanson's ability to provide medical certification of her serious health condition on May 7, meaning that it retained the right to review its decision to designate her two week's leave as "FMLA leave." True, it should have given her until May 7 to provide that certification, particularly in the absence of any indication that she used stealth, deceit or fraud or the like in procuring her approval for leave, but the fact that it did not does not constitute a waiver of its right to do so, or require that it be completely estopped from contesting Swanson's condition at trial. Still and all, SRC cannot point to those facts tending to demonstrate that Swanson did not comply with the strictures of the Department of Labor regulations to prevail on the FMLA claim at summary judgment. Of course, the Court may consider these facts for purposes of evaluating the merits of Swanson's disability claim, but, as discussed below, Dr. Patel's affidavit again gives rise to genuine issues of material fact on Swanson's claim under § 4112.01, *et seq.,* such that summary judgment must be denied.

matter of law. Some federal courts have held that if an employer challenges the medical opinion of an employee's health care provider, it must do so by providing medical evidence of its own in order to prevail at trial (let alone on summary judgment). Indeed, some Courts have held that it must invoke the process provided in 29 U.S.C. § 2613. Section 2613(a), as noted, allows an employer to require an employee requesting FMLA leave to provide a certification of his or her "serious health condition" from his or her health care provider, while subsections (c) and (d) allow it to get a second and even third *medical* opinion. Courts have therefore held that an employer's failure to request a certification under subsection (a), or to challenge a certification provided thereunder, under subsection (c) and/or (d), estops it from challenging it thereafter by other means. *See, e.g., Thorson v. Gemini, Inc.,* 205 F.3d 370, 382 (8th Cir.), *cert. denied,* 531 U.S. 871, 121 S.Ct. 172, 148 L.Ed.2d 117 (2000); *Washington v. Fort James Operating Co.,* 110 F.Supp.2d 1325, 1333–34 (D.Or.2000); *Miller v. AT & T,* 60 F.Supp.2d 574, 580 (S.D.W.Va.1999), *aff'd by* 250 F.3d 820 (4th Cir.2001); *Sims v. Alameda–Contra Costa Transit Dist.,* 2 F.Supp.2d 1253, 1261–62 (N.D.Cal.1998) ("The statutory scheme is designed to have medical determinations made by health care providers, rather than courts."). As the District Court for the Northern District of California observed in *Sims:*

> Congress stated that if an employee's medical certification meets certain requirements, it "shall be sufficient." 29 U.S.C. § 2613(b). If an employer has the choice of skipping the certification process and engaging instead in additional discovery of medical facts, the term "sufficient" is rendered meaningless.

2 F.Supp.2d at 1262.

Then again, other courts have held that the language contained in 29 U.S.C. § 2613(a), (c) & (d) is permissive ("the employer *may* require") (emphasis added), such that an employer need not rely on its statutory right to require a health care provider's certification in the first place, or right to challenge such once received with second or third medical opinions to the contrary, in order to prove in court that the employee's purported serious health condition was not what he or she claimed it to have been. *See, e.g., Rhoads v. F.D.I.C.,* 257 F.3d 373, 385–86 (4th Cir. 2001) (allowing employer to contest medical certification with contemporaneous evidence which tended to belie employee's claim that she was sick at the time she submitted her medical certification), *cert. denied,* 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002); *Stekloff v. St. John's Mercy Health Sys.,* 218 F.3d 858, 860 (8th Cir.2000).

The Court need not determine at present how the law as announced in these cases may affect evidentiary decisions at trial. Moreover, several of the cases cited are not truly analogous, because in the case at bar Swanson never submitted a medical certification under 29 U.S.C. § 2613(a). SRC requested as much, but in terminating her before the certification was due, it never gave her the opportunity to provide it. Thus, something other than "certifications" as defined by the statute will have to be considered at trial to discern whether Swanson truly did suffer from a "serious health condition" at the time she was terminated. *But see Thorson,* 205 F.3d at 381–82 (holding that plaintiff was entitled to summary judgment where the contemporaneous notes of her physician suggested that she (plaintiff) required FMLA leave; defendant, having never requested an initial medical certification under 29 U.S.C. § 2613(a), could not rely upon another physician's post-hoc evaluation of plaintiff to refute plaintiff's

claim that she had rightfully requested FMLA leave).

The Court points to these cases now to add emphasis to why SRC is not entitled to summary judgment on this claim: presently, Dr. Patel's statements constitute the sole source of medical evidence in the record, and are more than adequate for purposes of raising genuine issues regarding Swanson's entitlement to FMLA leave. It points to these cases also for the purpose of providing some direction to the parties for trial. *See, e.g., Thorson,* 205 F.3d at 377 & 382 (noting that whether a plaintiff's condition satisfies the "objective" elements of the definition of "serious health condition" is a question of fact for the jury, but that an employer cannot disprove the existence of such if it never requested a medical certification from the employee's physician, and if the physician's notes made at the time the employee requested leave indicated that the employee was not to work); *Cavin v. Honda of America Mfg., Inc.,* 2002 WL 484521 (S.D.Ohio Feb.22, 2002) (Holschuh, J.) (noting that the factual determinations should be made with reference to medical opinions). *Stekloff, supra,* a case in which the Eighth Circuit held that an employer need not rebut medical evidence with other medical evidence, is of little persuasive value because the circuit court completely misstated, and thus ignored, its earlier opinion in *Thorson,* which held to the contrary. 218 F.3d at 860. Even in *Rhoads, supra,* the Fourth Circuit made special note of the fact that the employer in that case had ample *contemporaneous* facts tending to suggest that at the time the employee requested FMLA leave, she was not genuinely sick. 257 F.3d at 379 n. 3 & 386. In this case, by contrast, SRC has so far

adduced no evidence that Swanson was not suffering from depression in April of 2001; it relies exclusively on statements she made at her deposition, taken over a year after the happening of the events giving rise to this litigation, to counter Dr. Patel's affidavit testimony and supporting documentation. Similar evidence has been disregarded by other courts. *E.g., Thorson,* 205 F.3d at 382.

■ Having determined that Swanson has raised a genuine issue regarding the fact that she was entitled to avail herself of the FMLA, the Court readily finds that she has adduced facts giving rise to genuine issues on every element of her prima facie FMLA retaliation claim: she engaged in an activity protected by the FMLA when she requested and was approved for a two-week leave; SRC clearly knew that she was exercising such a right thereunder; her termination by SRC was an adverse employment action; and there is ample evidence to suggest a causal connection between the protected activity and her termination.[5] *See Canitia,* 903 F.2d at 1066.

Turning to SRC's purported legitimate, non-discriminatory justification for terminating Swanson and thus not allowing her to exercise her rights under the FMLA, it stated in its termination letter that it was terminating her because she had not reported absent from work on April 23 or made arrangements for her work assignments in progress, which it stated she was "required" to do under the FMLA. According to SRC, Swanson's failure to do these two things "negate[d] the FMLA authorization." (Doc. # 14 at Ex. 6.) SRC also indicated that at the time Carl had authorized the FMLA leave, she had been

---

5. The element of causation can be inferred from a number of factors, including the timing of her discharge vis-a-vis her request for FMLA leave, especially in light of her recent

reprimands, and, as will be discussed below, the apparent pretext which SRC offered as the reason for her discharge.

unaware of Swanson's most recent reprimand from McGuire, and that FMLA leave could not be authorized "after the fact" without a physician's full authorization form completed in advance. (*Id.*) Curiously, in arguing for summary judgment, SRC presents a more recently fabricated justification for her termination: that she "was terminated because of her long-term attendance problems and because she ignored a final warning that her next attendance infraction would result in her termination." (Doc. # 9 at 12.)

An employer's burden at the second stage of the *McDonnell Douglas* framework of analysis is not onerous, and only requires it to articulate a good-faith, non-discriminatory justification for its actions related to the plaintiff. *See Hicks,* 509 U.S. at 507, 113 S.Ct. 2742. Herein, SRC has done just that. Nevertheless, turning to the third stage of the *McDonnell Douglas* analysis, the facts adduced by Swanson easily overcome SRC's purported non-discriminatory justification for terminating her, and create a genuine issue on the ultimate question of retaliation, which must therefore be left to the trier of fact. It is no surprise that, in moving for summary judgment, SRC wholly abandoned its original justification for terminating Swanson, as there is no basis in the FMLA, and none in the internal policies of SRC, as far as this Court has been made aware, for requiring an employee who has already been approved for FMLA leave to call her employer on her first day of said leave to inform it of the obvious: that she will not be in. Carl stated in her deposition that she made a verbal request of Swanson to do this, but this fact is disputed, and is therefore of no consequence for purposes of ruling on summary judgment. (Carl Depo. at 56–57; Swanson Aff. ¶ 2.) Of course, whether the employee should make arrangements regarding any incomplete work is certainly an area which an employer may address by policy or agreement (or even an unwritten "understanding") with the employee, but no such policy or agreement has been adduced by SRC in this case. In any event, it seems to be an awfully thin reed on which to base a termination. Indeed, SRC's very reluctance to press the issue herein gives rise to a reasonable inference that this justification was, from the beginning, a pretext for terminating Swanson. This inference in itself is enough to survive summary judgment on the issue of pretext.

The Court is also at a complete loss as to what SRC meant in saying that FMLA leave could not be authorized "after the fact" without a physician's full authorization form completed in advance. From the context of its termination letter to Swanson (written by Carl), what SRC appears to have been saying is that Swanson was not entitled to FMLA leave issued "after" the point in time at which she had been given two reprimands ("the fact") relating to her attendance problems. The FMLA contains no such prohibition. If SRC had a legitimate reason to terminate Swanson on April 20, 2001, then it could have done so. As it happened, however, it granted Swanson two week's FMLA leave, conditioned upon her providing, at the end of that time, a medical certification. 29 U.S.C. § 2613(a) entitled SRC to set this condition, but after that, Swanson's only obligation under the statute was to provide the certification as requested "in a timely manner." In this instance, "a timely manner" would have been by May 7, as SRC had requested. Before that point, barring any new infraction justifying her termination, the fact that she had recently received several reprimands for attendance issues was irrelevant insofar as the FMLA is concerned.

This then brings the Court to consider SRC's more recently fabricated justification for terminating Swanson: that she

"was terminated because of her long-term attendance problems and because she ignored a final warning that her next attendance infraction would result in her termination" (i.e., she was late for work on April 20, 2001). As indicated above, on April 18, 2001, McGuire issued Swanson a written reprimand, noting therein that since February 1 she (Swanson) had been tardy nineteen times and absent without approval seven times, and that her next infraction would result in her termination. (McGuire Aff. ¶ 10.) Swanson does not question that this reprimand was issued. Nor does she question the general proposition that an employer can terminate an employee, while she is away on FMLA leave, as long as the act of termination is not motivated by the fact that the employee has exercised her rights under the FMLA. *See Chandler*, 283 F.3d at 825–26. The shortcoming to SRC's argument is that it has not demonstrated that Swanson "ignored [her] final warning" by reporting late for work on April 20, 2001, in violation of the conditions of her April 18 reprimand. Swanson states that she arrived on time that day (Swanson Aff. ¶ 3), and SRC has not adduced any facts, as would be admissible as evidence at trial, *see* Fed.R.Civ.P. 56(e), to the contrary. As Swanson notes in her Memorandum in Opposition (Doc. # 14 at 12), McGuire stated that she was informed by Carl that Swanson was late for work on April 20 (*see* McGuire Depo. at 16), while, for her part, Carl stated that she was informed of the same fact by McGuire. (*See* Carl Depo. at 27.) Neither had personal knowledge of when Swanson arrived, which renders this evidence inadmissible hearsay. Because SRC has not adduced an affidavit or deposition testimony from any individual who has personal knowledge of her purported tardiness on

April 20, 2001, and because Swanson herself claims that she was not tardy, a genuine issue exists concerning whether this asserted fact is false, and whether SRC's reliance thereon to justify its act of terminating her was a pretext. *See Manzer*, 29 F.3d at 1084.[6]

Because genuine issues of material fact exist as to whether SRC retaliated against Swanson for exercising her rights under the FMLA when it terminated her in April of 2001, summary judgment on Swanson's FMLA claim (First Claim for Relief) is not warranted, and SRC's Motion for such is therefore OVERRULED.

### B. *Disability Discrimination (Second Claim for Relief)*

Swanson's Second Claim for Relief arises under the discrimination law of Ohio, Ohio Rev.Code § 4112.01, *et seq*, and actually alleges two different theories of discrimination: discrimination because of a disability and discrimination in the form of SRC's alleged failure to accommodate the disability.

█ The Court will consider the straightforward discrimination aspect of this claim first. The framework for its analysis is the same burden-shifting framework set forth above. In the absence of direct evidence of discrimination (e.g., "you are fired because you are disabled"), Swanson must first make out a prima facie case of such, which requires her to show that (1) she suffered from a disability; (2) suffered an adverse employment action; and (3) she was otherwise capable of performing the essential functions of her job with or without reasonable accommodation. *See Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738, 741 (1996); *Ek-*

---

**6.** The proximity in time between Swanson's request for FMLA leave and her termination only adds to the already strong inference that

SRC's justification for terminating her was a pretext and its true purpose unlawful. *See Skrjanc*, 272 F.3d at 315.

*strom v. Cuyahoga Cty. Community College,* 150 Ohio App.3d 169, 779 N.E.2d 1067, 1075–76 (2002). If she can do so, SRC has the burden of articulating a legitimate justification for taking the actions giving rise to her cause of action, and if it can do so, then the burden falls back upon Swanson to rebut SRC's evidence and raise a genuine issue regarding the true reason for why it took the actions that it did. *See Hood,* 658 N.E.2d at 741–42.

"Disability" is defined as

a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

Ohio Rev.Code § 4112.01(A)(13).

■ Swanson alleged in her Second Claim for Relief that she was substantially limited in her ability to sleep and work (Compl.¶ 17), and she has adduced facts sufficient for purposes of raising a genuine issue of material fact as to each element of her prima facie case of disability discrimination. Dr. Patel's affidavit statement that Swanson was depressed, and that her depression substantially limited her ability to sleep and work, satisfies the first element. The fact that she was terminated against her will satisfies the second element, and Dr. Patel's affidavit statement that she (Swanson) could have alleviated her problems at work had she been afforded the opportunity to receive continued treatment satisfies the third element. (Patel Aff. ¶¶ 9 & 10.) Furthermore, for the same reasons noted above with respect to the Court's analysis of Swanson's FMLA claim, although SRC contends that it terminated Swanson for a legitimate, nondiscriminatory reason, that contention is belied by the facts adduced by Swanson,

which give rise to the reasonable inference that its purported reason was a pretext. The Court therefore finds that Swanson has adduced facts sufficient to create a genuine issue of material fact as to whether it terminated Swanson because of her disability.

The Court will address three remaining points on this matter raised by SRC. *First,* SRC argues that Swanson's own deposition testimony contradicts Dr. Patel's affidavit statements, and demonstrates that she was not disabled, as contemplated by Ohio Rev. Code § 4112.01(A)(13). This argument is merely an attempt to impeach Swanson and Dr. Patel, and is one to be raised at trial, not on summary judgment. *Second,* in its Reply memorandum, SRC argues that Dr. Patel has not been identified by Swanson as an expert witness and that her affidavit should therefore be discounted. (Doc. # 15 at 14 n. 5.) This argument is not well taken. It is true, of course, that if a party does not disclose an expert pursuant to Rule 26(a) or (e) of the Federal Rules of Civil Procedure, then that party cannot rely on that expert at trial or in opposing a motion for summary judgment. Fed. R.Civ.P. 37(c). It is also true that Swanson did not identify Dr. Patel as an expert witness in her Witness Disclosure List (Doc. # 8). Dr. Patel, however, is not being utilized herein as an expert witness, which is defined as "a witness who is retained or specially employed to provide expert testimony in the case...." Fed. R.Civ.P. 26(a)(2)(B). Swanson identified Dr. Patel as a lay witness, for the purpose of testifying as to "Plaintiff's medical condition which precipitated her need for FMLA leave." (Doc. # 8 at 2.) Because she was Swanson's treating physician, she can do this without losing her character as a fact witness. Thus, her affidavit statements may be considered. *See, e.g., Ridder v. City of Springfield,* 1997 WL 117024, at *4 (6th Cir. March 13, 1997).

*Third*, citing *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16–17 & n. 4, it argues that Swanson's effort to depict herself as disabled on April 20, 2001, after having already received multiple reprimands and warnings for her attendance problems, is a specious attempt to use the labor laws as a shield to an otherwise legitimate and lawful adverse employment action. In *Soileau*, the First Circuit held that an employee, who was already on notice that his work habits might lead to his discharge if they continued as such, could not fabricate a belated claim of disability to avoid his discharge where he had made no attempt to improve his habits and continued to engage in the same conduct which had gotten him into trouble in the first place.

SRC's argument is not persuasive. As noted, it has not adduced facts as would be admissible as evidence at trial that it had a legitimate, non-discriminatory reason to terminate Swanson. For that reason alone, *Soileau* is noticeably inapposite, and there is no reason for the Court to agree with it at present. It bears repeating that SRC, without any hesitation on its part as far as the Court can tell, granted Swanson two week's leave on April 20, 2001. If it is true, as the Court must presume when ruling on SRC's Motion for Summary Judgment, that Swanson arrived at work on time on that day, it would be remarkable for SRC to argue that she, without any apparent knowledge that she had crossed the line set forth by McGuire in her reprimand of April 18, was abusing labor laws by asserting a belated claim of disability to shield herself from an imminent and legitimate adverse employment action. On the contrary, when the facts are viewed in a light most favorable to Swanson, it appears that she was penalized for taking steps toward self-improvement. It is not unreasonable for an employee walking on thin ice at work to seek help for whatever the root cause of her problem is, and it seems that an employer, if it truly valued its employee, would want to encourage this behavior, not penalize it. Indeed, this is the very conduct which the First Circuit found was lacking in *Soileau*: the plaintiff therein never presented his employer with an "improvement plan." 105 F.3d at 14. It appears to this Court that Swanson was attempting to do just that: attempting to deal with the root cause of her attendance problems, beginning with her request for two weeks of leave under the FMLA.

The Court will raise one caveat. Swanson's diagnosed disability, or handicap, is depression. Because of that depression, she alleged that she was substantially limited in performing the major life activities of sleeping and working. For purposes of the law in Ohio, working is a "major life activity." [7] Be that as it may, if one could demonstrate that he is substantially limited in one's ability to work, it would seem to defeat his ability to argue that he is otherwise capable, with or without reasonable accommodation, to perform the essential functions of his job. This is because where the major life activity in question is that of working, the plaintiff's burden is to show that she is substantially limited "in a broad range of jobs." *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Columbus Civ. Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 207 (1998); *see also* 29 C.F.R. § 1630.2(j)(3)(i) ("The

---

7. By contrast, for purposes of the federal American with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, the activity of "working" is merely one suggested type of "major life activity" proposed by the Department of Labor. *See* 29 C.F.R. § 1630.2(i). This regulation is not entitled to typical judicial deference because Congress did not give the Department of Labor the authority to promulgate it. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478–80, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). Yet, despite that fact, she must also be able to show that she would be able to perform the essential elements of her job, with or without reasonable accommodation. This Court is at a loss as to how such a showing could be made. It seems that proof as to one element negates the proof as to the other. The Court offers its remarks on this point only to provide the parties guidance in preparing for trial.

Insofar as Swanson's disability claim under Ohio Rev.Code § 4112.02 is premised on the allegation that SRC discriminated against her because she was disabled, as it relates to it, SRC's Motion for Summary Judgment is OVERRULED.

■ The Court will now consider Swanson's disability claim under Ohio law, insofar as it is premised on the allegation that SRC did not accommodate her claimed disability. SRC did not address this aspect of the claim in its Motion in Opposition, so the Court's own comments will be brief. " 'An employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business.' " *Mitnaul v. Fairmount Presbyterian Church,* 149 Ohio App.3d 769, 778 N.E.2d 1093, 1100 (2002) (quoting Ohio Admin. Code § 4112–5–08). "In addition, once an employee has made a requested accommodation, an employer is obligated to participate in the interactive process of seeking an accommodation by making a good-faith effort to work with the employee to seek an accommodation." *Id.* As one federal court noted in its analysis of a claim brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,*[8] the

interactive process (i.e., the process by which the employer and employee work together to facilitate a resolution relating to the employee's request for an accommodation) can be especially important where the claimed disability is a mental one. *Bultemeyer v. Fort Wayne Cmty. Schools,* 100 F.3d 1281, 1285–86 (7th Cir.1996) (stating that an employer cannot dismiss the needs of a mentally ill employee merely because it perceives the employee as stubborn or finds the interactive process frustrating).

The requested accommodation in this case was the FMLA leave itself. Because the Court has found that genuine issues exist as to whether SRC had a legitimate reason to deny Swanson such leave, it follows that a genuine issue of material fact also exists when the question is rephrased in the disability discrimination context to ask whether SRC failed to accommodate a reasonable request for accommodation.

As a final observation, it should be clarified that Swanson's disability discrimination claim is not at odds with her FMLA claim. SRC attempts to play Swanson's evidence relating to her respective claims off on each other, but the argument is not persuasive. A disability discrimination plaintiff must be able to show she can perform the essential functions of her job with or without reasonable accommodation. Honoring an employee's two-week FMLA leave request, where her physician has recommended the leave for the beneficial effect it might have on the employee's long-term ability to function properly at work, can be a reasonable accommodation itself (not to mention a duty imposed by Congress). Although Swanson must demonstrate for purposes of her FMLA claim that she needed two week's leave because

---

**8.** The courts of Ohio look to federal ADA law for guidance in construing disability claims under Ohio Rev.Code § 4112.02. *See McGlone,* 697 N.E.2d at 206–07.

she could not, *during that time,* perform the functions of her job, there is no reason why she cannot also demonstrate that she would have been able to perform the essential functions of her job upon her return from same. Of course, this being only the summary judgment stage of the litigation, the Court is not suggesting that Swanson has conclusively demonstrated these facts,[9] but when viewed in a light most favorable to her, the facts give rise to reasonable inferences that she was in need of FMLA leave for the two-week period between April 23 and May 7, 2001, and that had she been given such leave, she would have been capable of performing the essential functions of her job upon her return.

Accordingly, insofar as Swanson's disability claim under Ohio Rev.Code § 4112.02 is premised on the allegation that SRC discriminated against her by failing to accommodate her disability when it cut short her leave under the FMLA, as it relates to it, SRC's Motion for Summary Judgment is OVERRULED.

### C. *Intentional Infliction of Emotional Distress (Fourth Claim for Relief)*

■ Swanson's Fourth Claim for Relief, for intentional infliction of emotional distress, lacks merit. A claim for such will lie where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (citing Restatement (Second) of Torts § 46(1) (1965)). The Ohio Supreme Court has stated that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'," and "[t]here is no occasion for the law to intervene in every case where some one's [sic] feelings are hurt." *Id.*

This case is not about outrageous conduct. It is well-established under Ohio law that discrimination, by itself, is insufficient to support an intentional infliction of emotional distress claim. *E.g., Bryans v. English Nanny and Governess Sch., Inc.,* 117 Ohio App.3d 303, 690 N.E.2d 582, 592 (1996). As articulated by the Sixth Circuit:

> But an employee's termination, even if based upon discrimination, does not rise to the level of "extreme and outrageous conduct" without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress. *See Baab v. AMR Services Corp.,* 811 F.Supp. 1246, 1269 (N.D.Ohio 1993) ("To say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement."); *Bryans v. English Nanny and Governess Sch., Inc.,* 117 Ohio App.3d

---

**9.** Indeed, although the Court has no difficulty finding that Swanson should survive summary judgment, given that she has adduced evidence that she was disabled, and evidence giving rise to a genuine issue of material fact as to whether SRC's proffered legitimate, non-discriminatory reason for terminating her was a mere pretext, the evidence tendered by SRC for purposes of demonstrating that she was *not disabled,* within the meaning of Ohio Rev.Code § 4112.01, *et seq.,* is considerable. The fact remains, however, that the Court cannot consider competing inferences when ruling on summary judgment, regardless of how weak a plaintiff's claim, or how strong a defendant's defense, may appear.

303, 690 N.E.2d 582, 592 (1996) (holding that even if the plaintiff-student proved her claim of discrimination on the basis of disability, the school's conduct was "not so extreme or outrageous as to be intolerable in a civilized community"). *Godfredson v. Hess,* 173 F.3d 365, 373 (6th Cir.1999); *see also Dirham v. Van Wert County Hosp.,* 2000 WL 621139 (N.D.Ohio Mar.3, 2000) ("[T]he settled rule in Ohio is that the mere claim that a termination was unjustified does not rise to the level of extreme and outrageous required to state a claim for intentional infliction of emotional distress."); *Black v. Columbus Public Schs.,* 124 F.Supp.2d 550 (S.D.Ohio 2000) ("[A]n adverse employment action, 'even if based upon discrimination,' does not amount to extreme and outrageous conduct without 'proof of something more.' "); *Stoklosa v. Consolidated Rail Corp.,* 864 F.2d 425 (6th Cir.1988); *Francis v. Gaylord Container Corp.,* 837 F.Supp. 858 (S.D.Ohio 1992); *Morgan v. Taft Place Med. Ctr., Inc.,* 1998 WL 295560 (Ohio Ct.App. June 8, 1998) ("Beyond the inherently unpleasant circumstances of any termination, the language and tone of [Defendant] was not offensive or abusive. Unfortunately, [Plaintiff's] termination, in whatever location it took place, was likely to be an upsetting episode. However, the facts do not indicate that the actions of Bailey were extreme or outrageous.").

The Court finds the sentiment expressed in these cases to be controlling in this situation. That Swanson has adduced facts giving rise to genuine issues relating to her First and Second Claims for Relief is not enough. There must be something more; something to give rise to a *reasonable* inference that a reasonable jury would find SRC's actions extreme and outrageous. That "something" has not been adduced by Swanson. The facts she has adduced suggest a garden variety case of discrimination and retaliation. While the

character of her facts by no means belittles the merits of her FMLA and disability discrimination claims, it prevents the Court from drawing a reasonable inference that SRC's level of disregard for Swanson's alleged disability or need for FMLA leave was of such great magnitude that a reasonable jury could ultimately find its conduct extreme and outrageous.

Accordingly, Defendant's Motion for Summary Judgment as to this claim (Fourth Claim for Relief) is SUSTAINED.

### III. *Conclusion*

For the reasons and citations of authority set forth above, the Defendant's Motion for Summary Judgment (Doc. # 9) is OVERRULED as to the Plaintiff's First Claim for Relief (FMLA) and Second claim for relief (§ 4112.02), and is SUSTAINED as to the Plaintiff's Fourth Claim for Relief (Intentional Infliction of Emotional Distress). The Plaintiff is directed to move for a dismissal of her Third Claim for Relief (Ohio public policy), as she has indicated she would do. (*See* Doc. # 14 at 19.)