EKSTROM, Appellant,

v.

CUYAHOGA COUNTY COMMUNITY COLLEGE, Appellee.

[Cite as *Ekstrom v. Cuyahoga Cty. Community College,*
150 Ohio App.3d 169, 2002-Ohio-6228.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81501.

Decided Nov. 14, 2002.

Caryn M. Groedel and F. Benjamin Riek III, for appellant.

Ernest L. Wilkerson Jr. and Kathryn M. Miley, for appellee.

---

JAMES J. SWEENEY, Judge.

{¶ 1} Plaintiff-appellant Carol Ekstrom ("plaintiff") appeals from a judgment of the common pleas court that granted defendant-appellee Cuyahoga County Community College's ("CCC") motion for summary judgment on plaintiff's claims. Upon review, we conclude that there are no genuine issues of material fact and that CCC is entitled to judgment as a matter of law on plaintiff's claims. Accordingly, we affirm the trial court's judgment.

{¶ 2} A review of the record reveals the following facts: Plaintiff, a white female, was hired as an administrative assistant at CCC in 1978. In 1994, she

began working in the Health Careers and Sciences Department ("HCSD"). From 1994 through 1998, her immediate supervisor was Dr. Paula Gastenveld ("Dr. Gastenveld"), another white female.

{¶ 3} Plaintiff did not enjoy working in her department. She began applying for other positions at CCC almost immediately after she started. In March 1994, plaintiff applied for an opening as Staff Assistant I in the Organizational Development Department. Ninety-nine applications were received for this position. Six applicants were interviewed. Plaintiff was not selected to be interviewed for the job. The successful candidate was Melissa Joyce, a white female.

{¶ 4} In June 1995, plaintiff received her first performance evaluation by Dr. Gastenveld. CCC performs an annual review and a mid-year progress review of all employees. The standard evaluation form rates employees in five overall categories and then requires an overall rating of above average, satisfactory, or needs improvement. Plaintiff received an overall rating of above average.

{¶ 5} In November 1995, plaintiff applied for an opening as Executive Secretary in the Liberal Arts Department. Twenty-five applications were received for the position, and six were interviewed. While plaintiff was interviewed, she did not receive the job. The interview notes indicate that plaintiff did not seem enthusiastic about the position and gave minimal answers to questions. The successful candidate was Valerie Brown, a black female.

{¶ 6} From 1996 through 1997, plaintiff continued to receive above-average performance ratings by Dr. Gastenveld.

{¶ 7} During 1997, plaintiff began to keep detailed notes on what other employees in her office were doing. She kept track of their hours, who they were talking to, and what equipment they were using for their personal use. Two of these employees, Connie Hannah–Willis and Delores Dickson, both black females, complained to Dr. Gastenveld about plaintiff's behavior. In response, plaintiff complained to Dr. Gastenveld that she believed she was being discriminated against due to her race. Specifically, plaintiff asked Dr. Gastenveld "if she had to be black to get ahead in the department." Dr. Gastenveld was angry at plaintiff's comment and told plaintiff to leave her office.

{¶ 8} On September 19, 1997, several weeks after making this comment, plaintiff was suspended by Dr. Gastenveld and Daniel Hauenstein ("Hauenstein"), Director of Labor and Employment Relations at CCC, for creating a racially hostile work environment. In response, plaintiff filed a grievance stating that she was being subjected to reverse race discrimination. Plaintiff also filed another grievance stating that she was being slandered and harassed by Dr. Gastenveld. Plaintiff's complaints were investigated and denied. Plaintiff then filed a grievance against Hauenstein for not affording her due process. This complaint was

investigated and denied. Upon appeal by plaintiff, the original decision was affirmed.

{¶ 9} Upon plaintiff's return from her suspension, Dr. Gastenveld stated that plaintiff's performance, attendance, and attitude at work declined. Dr. Gastenveld stated that plaintiff took long lunches, handed in uncompleted work, made inappropriate comments about her coworkers and supervisors, and knowingly provided false information to her supervisors regarding her work and her coworkers.

{¶ 10} In December 1997, plaintiff applied for a Staff Assistant II position within the Health Careers and Sciences Department. Twenty applications were received and six individuals were interviewed and recommended for a second interview, including plaintiff. Plaintiff did not receive the job. The interview notes indicate that plaintiff was late for the interview, had poor eye contact, and had limited computer experience. The successful candidate was Elizabeth Amerson, a black female.

{¶ 11} In February 1998, plaintiff applied for a Staff Assistant II position for the Dean of Student Affairs. Fifty-eight applications were received and nine individuals were interviewed. Plaintiff was interviewed but did not receive the job. The interview notes indicate that plaintiff did not project a professional demeanor, that her managerial and organizational skills were limited, and that she belittled another college department during her interview. The successful candidate was Alphia Brown, a black female.

{¶ 12} In February 1998, plaintiff received her annual performance evaluation by Dr. Gastenveld. She received an overall rating of satisfactory. This evaluation indicated that plaintiff was continuing to have attendance problems and needed improvement in several areas: followup with supervisors; completion of tasks in a timely manner; cooperation with other staff members; and maintaining the work log.

{¶ 13} On March 9, 1998, plaintiff attended a predisciplinary hearing regarding her behavior and attitude at work and was suspended for five days.

{¶ 14} In March 1998, plaintiff applied for a Staff Assistant II position within the Liberal Arts Department. Twenty-two applications were received and seven individuals were recommended for interviews. Plaintiff did not accept the interview and did not receive the job. The successful candidate was Judy Reiser, a white female.

{¶ 15} On March 30, 1998, plaintiff left on an extended medical leave due to depression.

{¶ 16}   On April 15, 1998, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunities Commission, alleging reverse race discrimination.   Plaintiff subsequently dismissed this charge on her own.

{¶ 17}   In August 1998, plaintiff applied for an Executive Secretary position for the Dean of Student Affairs.   Fifteen applications were received and three were interviewed and recommended for a second interview, including plaintiff. Plaintiff did not receive the job after a reference check indicated that she did not get along with her supervisor.   The successful candidate was Deborah Hackney, a black female.

{¶ 18}   On September 8, 1998, plaintiff made a formal request for an accommodation by way of a transfer to a vacant position in another department.   This request was denied.

{¶ 19}   In November 1998, plaintiff returned to work following her medical leave.   Dr. Gastenveld was no longer employed by CCC.[1] Dr. Moes Entezampour was the new Dean of the Health Careers and Sciences Division and became plaintiff's immediate supervisor.   Plaintiff told Dr. Entezampour that she was happy with him as her supervisor.

{¶ 20}   In November 1998, plaintiff applied for a Program Assistant II position in the Administrative Offices.   Plaintiff was not interviewed for this position because it was a bargaining unit position.

{¶ 21}   In December 1998, plaintiff filed a complaint against CCC alleging claims of reverse race discrimination, handicap discrimination, retaliation, and intentional infliction of emotional distress.

{¶ 22}   In March 1999, plaintiff applied for an Executive Secretary position in the Math/Tech Department.   Eleven applications were received and nine individuals were interviewed, including plaintiff.   Plaintiff did not receive the job.   The interview notes indicate that plaintiff lacked focus, enthusiasm, and the initiative to take charge.   The successful candidate was Jean Schultz, a white female.

{¶ 23}   In March 1999, plaintiff also applied for one of three Customer Service Representative positions in the Academic and Student Affairs Department. Plaintiff did not receive the job.   The three successful candidates were Vanessa Kelly, Beverly Holliman, and Michael Taylor, all black.

{¶ 24}   In August 1999, plaintiff received her annual performance review by Dr. Entezampour.   She received a number of "Needs Improvement" ratings. This evaluation indicated that plaintiff was late with assignments, did not get

---

1.   Dr. Gastenveld left CCC for another school on August 4, 1998.

along with her coworkers, and was incapable of problem-solving on her own. Plaintiff was upset with this evaluation and refused to sign it.

{¶ 25} In October 1999, plaintiff applied for a Customer Service Representative II position. Sixteen applications were received and four individuals were interviewed, including plaintiff. Plaintiff did not receive the job. The successful candidate was Thomas Jakubec, a white male.

{¶ 26} In February 2000, plaintiff received a mid-year performance evaluation by Dr. Entezampour. Pursuant to CCC policy, a mid-year review is necessary following a poor annual review. Dr. Entezampour noted that plaintiff's performance had not improved and recommended that she be placed on probationary status. In response, plaintiff filed a grievance against Dr. Entezampour appealing her performance review. Plaintiff's complaint was denied.[2]

{¶ 27} On February 22, 2000, plaintiff was absent from work without Dr. Entezampour's permission. On February 24, 2000, Dr. Entezampour asked plaintiff via e-mail where she had been. Plaintiff responded via e-mail and stated that she had a personal emergency, that she did not have to notify him, and that she knew not to page him "unless the building is burning or someone has a gun to my throat." Dr. Entezampour forwarded the e-mail, which he considered to be inappropriate and disrespectful, to Hauenstein, who recommended disciplinary action.

{¶ 28} On March 9, 2000, plaintiff attended a predisciplinary hearing regarding her e-mail and insubordination to Dr. Entezampour and was suspended for ten days.

{¶ 29} On April 27, 2000, plaintiff attended another predisciplinary hearing. At this meeting, the decision was made to terminate plaintiff's employment rather than place her on probation.

{¶ 30} On May 12, 2000, plaintiff amended her complaint for the third time to include a claim for wrongful discharge in violation of public policy.

{¶ 31} On July 14, 2000, CCC filed a motion for summary judgment, which was granted by the trial court on July 6, 2001. It is from this judgment that plaintiff now appeals and raises six assignments of error for our review. We will address Assignments of Error I through VI together as they all address the trial court's grant of summary judgment.

---

**2.** In a letter dated March 15, 2000, Jerry Sue Thornton, President of CCC, informed plaintiff that pursuant to section (A)(2) of the Grievance Procedure, employees may not appeal their performance reviews.

{¶ 32} "I. The trial court erred in granting summary judgment with respect to plaintiff's claim of reverse race discrimination when genuine issues of material fact existed on each element of plaintiff's claim.

{¶ 33} "II. The trial court erred in granting summary judgment with respect to plaintiff's claim of retaliation when genuine issues of material fact existed and [sic] to each element of plaintiff's claims.

{¶ 34} "III. The trial court erred with respect to plaintiff's claim of handicap discrimination when a genuine issue of material fact existed in reference to whether CCC failed to provide a reasonable accommodation for plaintiff's disability.

{¶ 35} "IV. The trial court erred in granting summary judgment by failing to draw all reasonable inferences in favor of appellant, the non-moving party.

{¶ 36} "V. The trial court erred in granting summary judgment with respect to plaintiff's claims of intentional infliction of emotional distress.

{¶ 37} "VI. The trial court erred in granting summary judgment with respect to plaintiff's claim of violation of public policy."

{¶ 38} In these assignments of error, plaintiff claims that the trial court erred in granting summary judgment in favor of CCC because genuine issues of material fact existed concerning her claims for reverse race discrimination, retaliation, handicap discrimination, intentional infliction of emotional distress, and violation of public policy.

{¶ 39} An appellate court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 40} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 41} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence

contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his or her claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing that there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.

{¶ 42}   With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in CCC's favor was appropriate.

## A.   Reverse Race Discrimination

{¶ 43}   To set forth a prima facie case of reverse race discrimination, plaintiff must show (1) background circumstances supporting the inference that CCC was the unusual employer who discriminated against white employees, (2) she was discharged from her job by CCC and/or not hired for positions obtained by black employees, (3) she was qualified for the positions obtained by black employees, and (4) that the nonhiring of plaintiff enabled CCC to hire black people. *Carney v. Cleveland Hts.–Univ. Hts. City School Dist.* (2001), 143 Ohio App.3d 415, 429, 758 N.E.2d 234.

{¶ 44}   Once a prima facie case of discrimination is established, the employer may overcome the presumption by coming forward with a legitimate, nondiscriminatory reason for the discharge. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. The employee must then present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. The employee's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge. *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 617, 664 N.E.2d 987. Mere conjecture that the employer's stated reason is a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by the employer. To meet his or her burden in response to such a summary judgment motion, the plaintiff must produce some evidence that the employer's proffered reasons were factually untrue. *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), Cuyahoga App. No. 76333, 2001 WL 60035.

{¶ 45}   Here, plaintiff has failed to demonstrate a prima facie case of reverse race discrimination. While she arguably has demonstrated the second, third, and fourth elements of a prima facie case, she has failed to demonstrate that CCC is an employer who discriminates against white employees. A review of the record reveals that of the 14 vacant positions plaintiff applied for, four white employees and seven black employees were hired. The other positions were either not filled, bargaining unit positions for which plaintiff was not

qualified, or declined by plaintiff. In addition, plaintiff's supervisor during the time period that she made her initial discrimination complaints was Dr. Gastenveld, a white female. Clearly, plaintiff has not raised an inference that CCC is that "unusual employer who discriminated against the majority." *Carney v. Cleveland Hts.–Univ. Hts. City School Dist.,* supra. Thus, plaintiff cannot state a prima facie case of reverse race discrimination. Assuming arguendo that plaintiff could establish a prima facie case, CCC has established legitimate nondiscriminatory reasons for its actions that plaintiff cannot show to be pretextual. Specifically, CCC has presented substantial evidence that plaintiff failed to obtain other positions at CCC because she was not the most qualified applicant. The interview notes show that plaintiff lacked enthusiasm and computer skills, arrived late, and belittled other departments during her interviews. CCC also offers evidence that a number of white individuals received those open positions. CCC has also presented substantial evidence that plaintiff's termination was based on her poor attendance, her hostile attitude towards her coworkers and supervisors, her insubordination at work, and her numerous disciplinary problems, including several suspensions. Accordingly, the trial court did not err in granting CCC's motion for summary judgment on plaintiff's claim for reverse race discrimination.

## B. Retaliation

{¶ 46} To prove a claim of retaliation, plaintiff must establish three elements: (1) that she engaged in protected activity; (2) that she was subjected to an adverse employment action; and (3) that a causal link exists between a protected activity and the adverse action. *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 727, 729 N.E.2d 813.

{¶ 47} If an employee successfully establishes a prima facie case, it is the employer's burden to articulate a legitimate reason for its action. Id. If the employer meets its burden, the burden shifts back to the employee to show that the articulated reason was a pretext. Id.

{¶ 48} Assuming arguendo that plaintiff has established a prima facie case of retaliation, CCC has articulated several legitimate business reasons for terminating plaintiff. Specifically, CCC submits evidence that plaintiff had poor attendance, did not get along with her coworkers and supervisors, engaged in insubordination at work, was disciplined because of complaints from her coworkers that she was creating a hostile work environment, and was suspended on several occasions for her conduct.

{¶ 49} Faced with summary judgment, plaintiff failed to offer sufficient evidence that these justifications for her termination were pretextual and, moreover, failed to raise even an inference that retaliation actually motivated these

decisions. Accordingly, the trial court did not err in granting CCC's motion for summary judgment on plaintiff's claim for retaliation.

## C. Handicap Discrimination

{¶ 50} R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the handicap of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶ 51} In order to establish a prima facie case of handicap discrimination pursuant to R.C. Chapter 4112, plaintiff must demonstrate (1) that she was handicapped; (2) that an adverse employment action was taken by CCC, at least in part, because she was handicapped; and (3) that she, though handicapped, can safely and substantially perform the essential functions of the job in question with a reasonable accommodation. *Hood v. Diamond Prod., Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus, citing *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 496 N.E.2d 478.

{¶ 52} Here, plaintiff is arguably "handicapped" as set forth in R.C. 4112.01(A)(13) because she suffered from depression. See *Hayes v. Cleveland Pneumatic Co.* (1993), 92 Ohio App.3d 36, 42, 634 N.E.2d 228. However, she failed to meet the other two elements. There is no evidence to show that CCC fired plaintiff because of her disability. Rather, CCC terminated her employment after months of negative performance reviews and her poor attitude at work.

{¶ 53} Plaintiff also failed to show that any accommodation was necessary. There is no question that plaintiff was able to perform the functions of the job. Indeed, plaintiff herself admitted that she had no problems performing her job duties following her medical leave of absence. Rather, plaintiff wanted to transfer to another position because she did not get along with her coworkers and supervisor. Transfer or reassignment of an employee is within the realm of possible reasonable accommodation. *Burns v. Coca–Cola Ent., Inc.* (C.A.6, 2000), 222 F.3d 247. However, an employer is not required to transfer employees simply because they wish to "work in a different setting or under a different supervisor." *Lewis v. Zilog, Inc.* (N.D.Ga.1995), 908 F.Supp. 931, 948. See, also, *Coulson v. Goodyear Tire & Rubber Co.* (C.A.6, 2002), 31 Fed. Appx. 851, 858 (summary judgment for employer affirmed where employee was seeking to transfer so that he would not have to work with certain people); *Gaul v. Lucent Technologies, Inc.* (C.A.3, 1998), 134 F.3d 576, 577 (an employee's proposed accommodation, a transfer whenever he decided he was stressed, was unreason-

able as a matter of law); *Mazzarella v. United States Postal Serv.* (D.Mass.1994), 849 F.Supp. 89, 95 (holding that it was not reasonable for employer to juggle personnel to entirely remove the possibility that a supervisor might offend a particular employee); *Mancini v. General Elec. Co.* (D.Vt.1993), 820 F.Supp. 141, 148 (granting summary judgment against an employee who claimed he was entitled to a transfer because his current supervisor was the alleged source of the emotional problem which led to the employee's misconduct).

{¶ 54}  Reasonable minds could only conclude that plaintiff failed to establish a prima facie case of handicap discrimination.  Accordingly, the trial court did not err in granting CCC's motion for summary judgment on plaintiff's handicap-discrimination claim.

### D.   Intentional Infliction of Emotional Distress

{¶ 55}  In order to establish a claim of intentional infliction of emotional distress, plaintiff must show (1) that CCC either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to plaintiff, (2) that CCC's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that CCC's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.  *Burkes v. Stidham* (1995), 107 Ohio App.3d 363, 375, 668 N.E.2d 982.  Serious emotional distress requires an emotional injury that is both severe and debilitating.  Id.

{¶ 56}  To recover for intentional infliction of emotional distress in Ohio, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.  Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  *Yeager v. Loc. Union 20* (1983), 6 Ohio St.3d 369, 374–375, 453 N.E.2d 666.

{¶ 57}  Here, plaintiff claims that the following actions on the part of CCC constituted reckless, wanton, extreme, and outrageous conduct: (1) ostracism from coworkers; (2) Dr. Gastenveld, her supervisor, placed her on probationary status after one questionable performance evaluation; and (3) she was terminated from her job.

{¶ 58} We conclude that these allegations do not satisfy the elements of intentional infliction of emotional distress as a matter of law. First, no reasonable jury could find that the ostracism by fellow employees constituted extreme and outrageous conduct. Plaintiff made daily notations on what certain other employees were saying or where they were going. She made notes on how her black coworkers helped other minority students as opposed to white students. She made comments about her supervisors and coworkers, including racial and sexual comments. Any ostracism suffered by plaintiff was of her own making.

{¶ 59} Next, plaintiff failed to present any evidence to indicate that CCC intended to cause her emotional distress, or knew or should have known that anyone's actions would result in serious emotional distress. Moreover, an employer is not liable for a plaintiff's emotional distress if the employer does no more than "insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 239, 511 N.E.2d 403. Here, CCC was entitled to terminate plaintiff because of her poor work performance and inappropriate behavior to her supervisors and coworkers, regardless of whether they knew or intended that the termination would add to her emotional distress. Id. See, also, *Simonelli v. Anderson Concrete Co.* (1994), 99 Ohio App.3d 254, 262, 650 N.E.2d 488; *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82, 603 N.E.2d 1126. Accordingly, the trial court did not err in granting CCC's motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress.

### E. Violation of Public Policy

{¶ 60} To establish a claim for wrongful discharge in violation of public policy, plaintiff must show (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) that dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy; (3) that plaintiff's dismissal was motivated by conduct related to the public policy; and (4) that CCC lacked overriding legitimate business justification for the dismissal. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 384, 639 N.E.2d 51.

{¶ 61} Since plaintiff has failed to establish her discrimination and retaliation claims, she has not proved that her discharge jeopardized those public policies. Accordingly, the trial court properly granted summary judgment on her claim of wrongful discharge in violation of public policy. See *Cochran v. Columbia Gas of Ohio, Inc.* (2000), 138 Ohio App.3d 888, 895, 742 N.E.2d 734; *Bennett v. Roadway Express* (Aug. 1, 2001), Summit App. No. 20317, 2001 WL 866261; *Crosier v. Quikey Mfg. Co., Inc.* (Feb. 28, 2001), Summit App. No. 19863, 2001 WL 196511.

### F. Reasonable Inferences

{¶ 62} Plaintiff argues that the trial court considered the weight of the evidence and construed inferences in its decision to grant CCC's motion for summary judgment. We disagree. After reviewing the record, we conclude that the trial court made a thorough analysis of the evidence and correctly followed the requirements of Civ.R. 56(C) in making its determination that there was no evidence of substantial probative value to support plaintiff's claims.

{¶ 63} Defendant's first, second, third, fourth, fifth, and sixth assignments of error are overruled.

Judgment affirmed.

TIMOTHY E. McMONAGLE, A.J., and FRANK D. CELEBREZZE JR., J., concur.