**Christine BENGE, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. C–3–01–228.**

United States District Court, S.D. Ohio, Western Division.

March 31, 2003.

Andrew J. Ruzicho, II, Andrew Jack Ruzicho, Law Offices of Andrew J. Ruzicho, Columbus, OH, for plaintiff.

James M.L. Ferber, Cheryl Renee Hankerson, Kimberly L. Hall, Columbus, OH, for defendant.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 19).

RICE, Chief Judge.

The Plaintiff, an employee of the Defendant, brings this litigation to obtain compensation for the Defendant's alleged failure to accommodate her disability which flowed from a condition and pain she began to experience in 1986.[1] The Plaintiff began her employment at Defendant's Moraine, Ohio, Assembly Plant in February, 1985, as an assembler in the trim department.[2] The Plaintiff's employment with the Defendant has been governed by a series of collective bargaining agreements into which it has entered with the International Union of Electronic, Electrical, Technical, Salaried, Machine and Furniture Workers ("Union").

During the Spring of 1986, the Plaintiff complained to Defendant's medical department that she was suffering extreme pain in her wrists. In June, 1986, the Plaintiff was diagnosed with carpel tunnel syndrome, tendinitis, tennis elbow and trigger finger. As a result of the pain which she was experiencing, the Plaintiff took disability leave during June, July and parts of August, 1986. During that leave, the Plaintiff received workers' compensation and short term disability payments.

In May, 1987, Plaintiff underwent surgery to remove a cyst from her right wrist. For the next eight weeks, the Plaintiff was on disability leave and participated in physical therapy. Plaintiff's personal physician cleared her to return to work after she had completed that therapy. When she returned to work in August, 1987, Plaintiff was examined by a physician in Defendant's medical department, who imposed restrictions prohibiting the use of torque guns or lifting more than 25 pounds. The restrictions were to end 12

---

1. Since this case comes before the Court on the Defendant's Motion for Summary Judgment (Doc. # 19), the Court sets forth the circumstances giving rise to the Plaintiff's claims in the manner most favorable to the Plaintiff.

2. Plaintiff had previously worked for Defendant's Frigidaire Division, until laid-off in or about March, 1979.

weeks after the Plaintiff returned to work. During the next three years, the Plaintiff continually complained of pain. Throughout that period, her restrictions were increased to include prohibiting the use of torque guns, hand tools, repetitive grasping, wrist vibrations and lifting over 25 pounds.

From June 24, 1991, until May 30, 1993, the Plaintiff was on disability leave as a result of her pain. During that leave, she received short term and then extended disability payments. At the Defendant's insistence, the Plaintiff was required to undergo three independent medical examinations during this disability leave. The third examiner, Dr. Nagy, concluded that the Plaintiff was no longer totally disabled and unable to work. As a result, her disability leave ended, and she was required to return to work.

When she returned to work in June, 1993, the Plaintiff was given a fitness for duty examination by a physician in Defendant's medical department. As a result of that examination, the Plaintiff was released to return to work with no restrictions. In late June, 1993, the Plaintiff complained about pain to the Defendant's medical department. A physician in that department concluded that her complaints of pain were out of proportion to physical findings. As a consequence, she was cleared to return to work and prescribed pain medication. Plaintiff disagreed with the diagnosis of that physician and visited her personal physician. On June 25, 1993, Plaintiff's personal physician placed her on sick leave, where she remained until May, 1995.

After Plaintiff returned to work in May, 1995, Defendant's medical department issued her job restrictions, prohibiting her from using power or hand tools, pushing, pulling, jerking, forceful gripping and twisting with both hands and repetitive lifting. Upon her return to work, Plaintiff was assigned to a visual inspection position which she performed for eight months without complaint. When that position was eliminated, she was assigned to a position which required her to remove tape from trucks, release their brakes and close their doors. Plaintiff complained that this position caused her to suffer pain and she took intermittent sick leave from the end of April, 1996, until May, 1997.[3] While on sick leave, Plaintiff received disability benefits and underwent physical therapy.

When the Plaintiff returned to work in May, 1997, she was assigned a position brushing debris from trucks before they were sent through an automatic washer. Plaintiff functioned without complaint in that position for the next 17 months, until the end of December, 1997, when the position was eliminated.

At the end of January, 1999, after the Plaintiff had been assigned to perform a number of jobs which caused her to experience pain, she once again went on sick leave, where she remained until June, 2000, when the Union and the Defendant settled a grievance which had been filed on her behalf, by assigning her to a clerical position in the Apprenticeship office.[4] Plaintiff remains employed by the Defendant in that capacity.

In her Complaint (Doc. # 1), the Plaintiff sets forth five claims for relief, to wit: that the Defendant discriminated against

---

**3.** During that period, Plaintiff worked for approximately two months.

**4.** While on sick leave, the Plaintiff filed a charge of discrimination with the EEOC, on April 23, 1999, alleging that she had been discriminated against because of her disability.

her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Chapter 4112 of the Ohio Revised Code ("Chapter 4112") by failing to accommodate her disability (First and Second Claims for Relief); that the Defendant violated the ADA and Chapter 4112 by retaliating against her for having filed a charge of discrimination (Third and Fourth Claims for Relief); and that the Defendant's actions constituted the intentional infliction of emotional distress in violation of the Ohio common law (Fifth Claim for Relief).

This case is now before the Court on the Defendant's Motion for Summary Judgment (Doc. # 19). As a means of analysis, the Court will initially set forth the standards which must be applied to all such motions, following which it will turn to the parties' arguments in support of and in opposition to that filed by the Defendant.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favor-

ably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in sup-

port of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See*

also *L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment....."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

■■■ The Defendant seeks summary judgment on all of the Plaintiff's claims. Plaintiff asserts, *inter alia*, claims that she has been the victim of disability discrimination and subjected to the intentional infliction of emotional distress since 1986, when she first experienced pain in her wrists. The Defendant initially argues that the Plaintiff's claims of disability discrimination and intentional infliction of emotional distress are barred, in part, by the relevant statutes of limitations.[5] This Court agrees. A person's claim under the ADA is barred, unless she has filed a charge of discrimination within 300 days of the discriminatory act. *See* 42 U.S.C. § 12117(a).[6] An action under Chapter 4112 is subject to the six-year statute of limitations contained in § 2305.07 of the Ohio Revised Code. *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 638 N.E.2d 991 (1994) (syllabus).

---

**5.** In her memorandum opposing Defendant's motion, the Plaintiff has not addressed this argument. *See* Doc. # 23.

**6.** Section 12117(a) incorporates the remedies and procedures of Title VII for claims of disability discrimination in violation of the

ADA. *See also, Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir.1996) (and cases cited therein). Title VII requires that the victim of discrimination file a charge of discrimination within 300 days of the discriminatory act. *See* 42 U.S.C. § 2000e–5.

Ohio courts have applied the four-year statute of limitations contained in § 2305.09(D) of the Ohio Revised Code to claims of intentional infliction of emotional distress. *See e.g., Steiner v. Steiner*, 85 Ohio App.3d 513, 522, 620 N.E.2d 152, 158 (1993). The Plaintiff filed her charge of discrimination on April 23, 1999. Therefore, the Plaintiff's claim of disability discrimination in violation of the ADA is barred to the extent that it is based upon events occurring prior to June 26, 1998 (300 days before April 23, 1999). Since this litigation was initiated on May 25, 2001, the Plaintiff's claim under Chapter 4112 is barred by the statute of limitations to the extent that it is based upon events occurring before May 25, 1995, and her claim of intentional infliction of emotional distress is barred by the statute of limitations to the extent that it is based upon events occurring before May 25, 1997.

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 19), to the extent that the Defendant argues therein that Plaintiff's claims of disability discrimination and intentional infliction of emotional distress are partially barred by the applicable statutes of limitations. Having so concluded, the Court turns to the Defendant's arguments that it is entitled to summary judgment on the remainder of the Plaintiff's claims. As a means of analysis, the Court initially addresses the parties' arguments concerning Plaintiff's disability discrimination claims, following which it turns to their contentions relating to Plaintiff's retaliation claims. Finally, the Court will rule upon the branch of Defendant's motion with which it seeks summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

## I. Disability Discrimination

Under the ADA, it is illegal for any covered entity to discriminate against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). Similarly, § 4112.02 of the Ohio Revised Code makes it unlawful for an employer to discriminate against an individual because that individual is disabled.[7] The Plaintiff contends that the Defendant violated these statutory provisions by failing to accommodate her disability. Initially, the Defendant argues that it is entitled to summary judgment on Plaintiff's disability discrimination claims, because she is not disabled as that term is defined by the ADA and Chapter 4112.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). The Ohio Revised Code uses similar language to define disability.[8] *See* Ohio Rev.Code § 4112.01(A)(13). Given the similarity of the language used in the ADA and Chapter 4112, the Ohio Supreme Court has held that it is appropriate to utilize federal regulations and case law when interpreting the provisions of Chapter 4112 relating to disability discrimination. *Columbus Civil Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204, 206–07 (1998). *See also, Martin v. Barnesville Exempted School Dist. Bd. Of Ed.*, 209 F.3d 931, 934 n. 2 (6th Cir.2000). Herein, the Defendant

---

7. It is not questioned that the Defendant is a covered entity under the ADA and an employer under Chapter 4112.

8. Both the ADA and Chapter 4112 also define disability to include having a record of a physical or mental impairment and being regarded as having a physical or mental impairment. *See* 42 U.S.C. § 12102(2)(B) and (C); Ohio Rev.Code § 4112.01(A)(13). Since the Plaintiff neither alleges nor argues that she is disabled in accordance with those provisions, the Court need not address them further.

does not challenge that the Plaintiff's carpel tunnel syndrome and tendinitis constitute physical impairments. In addition, it cannot be questioned that performing manual tasks is a major life activity.[9] *See* 45 C.F.R. § 84.3(j)(2)(ii); Ohio Rev.Code 4112.01(A)(13). Thus, the question becomes whether the evidence raises a genuine issue of material fact that the Plaintiff's physical impairments "substantially limit" her major life activity of performing manual tasks.

In *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), the Supreme Court addressed the question of whether the plaintiff's impairments substantially limited her major life activity of performing manual tasks in a factually similar case. Therein, the plaintiff alleged that she had been discriminated against in violation of the ADA, because the defendant had failed to accommodate her disability, carpel tunnel syndrome and tendinitis, which had been brought on by the use of pneumatic tools in the defendant's manufacturing facility where she worked. The plaintiff claimed that she was disabled, because her physical impairments (carpel tunnel syndrome and tendinitis) substantially limited her major life activity of performing manual tasks.[10] The District Court granted summary judgment to the defendant, concluding that the plaintiff was not disabled as that term is defined by the ADA. Upon appeal, the Sixth Circuit reversed. The Supreme Court granted *certiorari* in order to examine the meaning of "substantially

limits" in § 12102(2)(A). The *Toyota* Court concluded that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the person from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S.Ct. 681. Therein, the Supreme Court stressed that it is not enough to show that the person claiming to be disabled is unable to perform manual tasks associated with her job. *Id.* at 200–01, 122 S.Ct. 681 ("When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job."). The Supreme Court also noted that "household chores, bathing and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should [be] part of the assessment of whether respondent was substantially limited in performing manual tasks." *Id.* at 202, 122 S.Ct. 681.[11]

■ Herein, it is not questioned that the Plaintiff's physical impairments prevent her from performing a number of jobs at work; however, as the Supreme Court stressed in *Toyota,* it is not enough that a plaintiff be unable to perform manual tasks associated with her work. Plaintiff's deposition testimony reveals that she is able to perform a number of manual tasks which are of central importance in most people's lives. For instance, she drives

---

**9.** Both parties analyze this case under the theory that the Plaintiff's physical impairments substantially limit the major life activity of performing manual tasks.

**10.** Therein, the plaintiff had also alleged that she was disabled because her physical impairments substantially limited her major life activities of working and lifting. Since those issues had not been addressed by the Court of

Appeals, the Supreme Court did not address them.

**11.** Ohio courts have followed the decision of the United States Supreme Court in *Toyota,* when ruling on claims under Chapter 4112. *See Yamamoto v. Midwest Screw Products,* 2002 WL 1400106 (Ohio App.2002).

herself, bathes and dresses herself, cooks for herself and cleans her home. In addition, the Plaintiff is able to care for her grandchildren, including being able to feed them and change their diapers, both of which require that she perform common manual tasks. Nevertheless, Plaintiff points to evidence which shows that she is not always able to perform those tasks. For instance, during her deposition, the Plaintiff testified that a friend would help her clean her home on occasion and that she occasionally needed help cooking or shopping. However, the Plaintiff's deposition testimony reveals that she was able to perform those tasks herself most of the time. In *Toyota*, the Supreme Court held that an impairment must prevent or severely restrict a person's ability to perform manual tasks. Since the evidence is that the Plaintiff needed assistance only occasionally, the Court concludes that the evidence does not raise a genuine issue of material fact as to whether Plaintiff's impairment prevents or severely restricts her ability to perform "the variety of tasks central to most people's daily lives." Moreover, for similar reasons, the Court cannot conclude that the evidence raises a genuine issue of material fact on the issue of whether Plaintiff's impairment prevents or severely restricts her ability to perform

"the variety of tasks central to most people's daily lives," because she only drives herself 75% of the time.[12]

Based upon the foregoing, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether the Plaintiff is disabled.[13] Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 19), as it relates to Plaintiff's claims of disability discrimination, set forth in Counts One and Two.

## II. Retaliation

The Plaintiff claims that the Defendant retaliated against her in violation of the ADA and Chapter 4112, because she filed a charge of discrimination in April, 1999. The manner in which the Defendant retaliated against the Plaintiff is not specified in her Complaint. The Defendant argues that it is entitled to summary judgment on these claims, because the Plaintiff cannot establish a *prima facie* case of retaliation under the ADA or Chapter 4112.

In *Walborn v. Erie County Care Facility*, 150 F.3d 584 (6th Cir.1998), the Sixth Circuit reiterated that to establish a *prime facie* case of retaliation under the ADA, the Plaintiff must demonstrate that "she engaged in protected activity; that the

12. In her affidavit, Plaintiff states that she was unable to perform many manual tasks when on sick leave during 1996 and 1997. As previously stated, the statute of limitations bars the Plaintiff from asserting a claim under the ADA based upon the fact that she was disabled in 1996 and 1997. However her claim under Chapter 4112 that she was disabled in 1996 and 1997 is not barred by the statute of limitations, being governed by the six year period of limitations. In *Toyota*, the Supreme Court noted that to be substantially limiting an "impairment's impact must be permanent or long term." 534 U.S. at 198, 122 S.Ct. 681. To support that statement, the Supreme Court cited 29 C.F.R. § 1630.2(j)(2). Ohio courts have relied upon the same regulation to hold that an impairment must be

permanent or long term to be substantially limiting under Chapter 4112. Since Plaintiff's inability to perform manual tasks when on sick leave in 1996 and 1997 was not permanent or long term, witness the fact that she suffered from that incapacity for a only short period of time, the Court concludes that, in accordance with *Toyota*, the evidence does not raise a genuine issue of material fact as to whether she was disabled during that period, under state law.

13. Therefore, it is not necessary to address Defendant's argument that it is entitled to summary judgment, because it reasonably accommodated Plaintiff.

exercise of her civil rights was known by the defendant; that defendant thereafter took adverse employment action; and that a causal connection exists between the protected activity and the adverse employment action." *Id.* at 588–89 (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir.1987)). Ohio courts have applied the same factors to determine whether a plaintiff has established a *prima facie* case of retaliation. *Pflanz v. City of Cincinnati*, 149 Ohio App.3d 743, 764, 778 N.E.2d 1073, 1089 (2002) (citing *Canitia v. Yellow Freight*, 903 F.2d 1064, 1066 (6th Cir.1990)). *See also, Ekstrom v. Cuyahoga County Community College*, 150 Ohio App.3d 169, 180, 779 N.E.2d 1067, 1075 (2002) (recognizing similar elements of a *prima facie* case of retaliation under Chapter 4112). For purposes of ruling upon its Motion for Summary Judgment (Doc. # 19), the Defendant concedes that the evidence raises a genuine issue of material fact concerning the first two elements of Plaintiff's *prima facie* claim of retaliation (i.e., that she engaged in protected activity and that it was aware of her activity). However, the Defendant argues that the evidence fails to raise a genuine issue of material fact concerning the third element of that claim (i.e., whether it took an adverse employment action against her).[14]

■  In so arguing, the Defendant assumes that the Plaintiff's claims of retaliation are based upon her current assignment to the Apprenticeship office. The Defendant argues that assigning the Plaintiff to her position in the Apprenticeship office in June, 2000, did not constitute an adverse employment action. Defendant points out that the Plaintiff has not requested a transfer to another position, that she has not been told that she will be denied a transfer if she requests one and that she has not complained about pain since she began to work in that office. In addition, the evidence is that the Plaintiff receives the same compensation working in the Apprenticeship office as she would receive if she worked in another position. In her memorandum opposing the Defendant's motion, the Plaintiff takes the position that the Defendant retaliated against her by not assigning her to the Apprenticeship office until June, 2000.[15] *See* Doc. # 23 at 18. She points out that she was on sick leave in April, 1999, when she filed the charge of discrimination and that she was not assigned to the Apprenticeship office until June, 2000. During the interim, the Plaintiff received less pay and she was not able to accumulate seniority. In response, the Defendant argues that the Plaintiff has not suffered an adverse employment action, because she was not entitled to be assigned to the Apprenticeship office prior to the time that it settled her grievance with the Union. *See* Doc. # 26 at 13. Assuming for present purposes that the

14.  The Defendant has not addressed the question of whether the evidence raises a genuine issue of material fact as to the existence of a causal connection between the Plaintiff's protected activity and the adverse employment action, the fourth element of Plaintiff's *prima facie* case of retaliation.

15.  Alternatively, Plaintiff argues that her retaliation claims are based upon the premise that Defendant retaliated against her by forcing her to take sick leave. The flaw in that argument is that the Plaintiff went on sick leave long before she filed her charge of discrimination and that, therefore, Defendant's forcing her to take sick leave cannot serve as an adverse employment action which flowed from her engaging in protected activity. Since Plaintiff was on sick leave when she filed her charge of discrimination in April, 1999, and remained on such leave until being placed in the Apprenticeship office in June, 2000, the evidence fails to raise a genuine issue of material fact on her theory that the Defendant retaliated against her by forcing her to go on sick leave in retaliation for her having filed that charge.

Plaintiff did not have a contractual right to such an assignment, the Court rejects the Defendant's assertion that such would entitle it to summary judgment. The fact that an employee does not have a contractual right to a position is not a defense to a claim of employment discrimination. In other words, an employer cannot discharge an employee in retaliation for having filed a charge of discrimination and then defend its action on the basis that the employee was employed in an at-will relationship and, thus, was without a contractual right to continued employment. Moreover, the Defendant has not presented evidence that it was prevented from assigning Plaintiff to the Apprenticeship office by the collective bargaining agreements. Simply stated, the Defendant's refusal to assign the Plaintiff to a position in the Apprenticeship office, because she had filed a charge of discrimination, would constitute an adverse employment action and, thus, retaliation in violation of the ADA and Chapter 4112.

Accordingly, the Court overrules the Defendant's Motion for Summary Judgment (Doc. # 19), as it relates to Plaintiff's claims of retaliation.

### III. Intentional Infliction of Emotional Distress

■ The Plaintiff claims that the Defendant's actions from 1986, through the time that she was assigned to the Apprenticeship office constituted the intentional infliction of emotional distress in violation of the Ohio common law. In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), the Ohio Supreme Court held, in the syllabus:

One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily

harm. (*Bartow v. Smith*, 149 Ohio St. 301, 78 N.E.2d 735, overruled.)

Therein, the Ohio Supreme Court elaborated upon what would be deemed to constitute extreme and outrageous conduct:

With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment ["]d["] to Section 46 of the Restatement, *supra*, at 73, to be instructive in describing this standard:

" * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where [someone's] feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety

valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *"

*Id.* at 374–75, 453 N.E.2d at 671–72. The Defendant argues that, to the extent that it is not barred by the statute of limitations, the Plaintiff does not have evidence that it did anything to her which is extreme and outrageous, as those terms are defined by *Yeager.* For reasons which follow, this Court agrees.

It bears emphasis that the Plaintiff's claim of intentional infliction of emotional distress is barred to the extent that it is based upon actions which occurred before May 25, 1997. From that date until the filing of this lawsuit, the Plaintiff was on sick leave for a significant amount of time and she was assigned to the Apprenticeship office in June, 2000. While she was otherwise working for the Defendant, the only actions taken against her were its alleged disregard of her medical restrictions, by assigning her to jobs which exceeded those restrictions and failing to assign her to a position within her restrictions. Above, the Court has concluded that the evidence fails to raise a genuine issue of material fact as to whether the Defendant engaged in disability discrimination as a result. However, even if the Defendant had discriminated against Plaintiff on the basis of her disability as a result of disregarding her medical restrictions between May 25, 1997, and June, 2000, the Court would nevertheless conclude that the evidence fails to raise a genuine issue of material fact concerning the question of whether the Defendant engaged in extreme and outrageous behavior,

as defined by *Yeager.* Courts have held that, "under Ohio law, an adverse employment action, even if based upon discrimination, does not amount to extreme and outrageous conduct without proof of something more." *Black v. Columbus Public Schools,* 124 F.Supp.2d 550, 588 (S.D.Ohio 2000). *See also, Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999) (plaintiff who failed to allege any facts beyond those supporting his age discrimination claim did not establish a claim for emotional distress); *Cameron v. Bd. of Educ.,* 795 F.Supp. 228, 238 (S.D.Ohio 1991) (plaintiff's only basis for emotional distress claim, that she "may have been dismissed for discriminatory reasons" was insufficient to establish claim); *Hawley v. Dresser Industries, Inc.,* 737 F.Supp. 445, 469 (S.D.Ohio 1990) ("the mere unjustifiable nature of a termination does not make it extreme and outrageous") *overruled on other grounds, Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1042 (6th Cir.1992). Herein, the Plaintiff has failed to present "proof of something more." Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether Defendant engaged in extreme and outrageous conduct, within the period of the applicable statute of limitations.[16]

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 19), as it relates to Plaintiff's claim of intentional infliction of emotional distress.

Based upon the foregoing, the Court sustains in part and overrules in part Defendant's Motion for Summary Judgment (Doc. # 19). As a consequence, only Plaintiff claims of retaliation under the ADA

---

16. Given that conclusion, it is not necessary for the Court to address the Defendant's alternative argument that the evidence fails to raise a genuine issue of material fact as to whether she suffered serious emotional distress as a result of its conduct.

and Chapter 4112 of the Ohio Revised Code remain to be resolved.[17]

---

17. The Court has not ruled upon Defendant's motion as it related to Plaintiff's request for punitive damages, since it does not appear that she is seeking such damages for her retaliation claims. *See* Doc. # 23 at 18–19 ("The punitive damages claim stems from defendant's reckless indifference to her work-related injuries and deliberate refusal to accommodate her disabilities.").