JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Business Property Specialists, d.b.a. Alan R. Daus Associates ("Daus"), appeals the judgment of the Cuyahoga County Court of Common Pleas that (1) granted summary judgment in favor of appellee, Spectrum of Supportive Services ("Spectrum"), and (2) denied Daus' motion for summary judgment. For the reasons stated herein, we reverse the grant of summary judgment to Spectrum, affirm the denial of Daus' motion for summary judgment, and remand the case to the trial court.
 {¶ 2} The following facts give rise to this appeal. Spectrum is an Ohio not-for-profit corporation. In 2003, Spectrum desired to consolidate its offices and workspace into one location. It retained the services of Daus, as its sole and exclusive real estate agent. The parties entered an exclusive tenant agency agreement ("the Agency Agreement") on October 26, 2003. The Agency Agreement states in relevant part:
 "1. EMPLOYMENT OF AGENT.
 [Spectrum] does hereby employ [Daus] as its sole and exclusive Real Estate Agent for the purpose of locating, securing, and negotiating on behalf of [Spectrum] the purchase or lease of a suitable building * * *. [Spectrum] does hereby agree to * * * refer all relevant inquires to [Daus], and to conduct all negotiations through [Daus]. * * *.
 "2. ACCEPTANCE OF EMPLOYMENT.
 * * *
 "3. PAYMENT OF FEE AND COMMISSION. [Spectrum] shall have no liability or obligation to pay [Daus] any fees or commission for [Daus'] services except as agreed to hereunder. [Daus] agrees instead to look solely to the owner of the property in which [Spectrum] purchases or leases such space for payment of its fees or commission. [Spectrum] agrees not to enter into an agreement with an owner, lessor, or sublessor which has not entered into an acceptable written commission *Page 4 
agreement with [Daus].
 "4. TERM.
 The initial term of this Agreement shall commence on October 26, 2003, and shall remain in full force and effect for one (1) year. In case of cancellation, [Spectrum] will protect [Daus'] right to receive a commission should [Spectrum] enter into a purchase or lease agreement for a property submitted by [Daus] during the term of his agency."
The Agency Agreement was signed by a representative for each party.
 {¶ 3} After executing the Agency Agreement, Scott Garson, a real estate agent with Daus, spent considerable time and effort locating and showing properties to Spectrum and preparing comparisons of leases and buildings under consideration.
 {¶ 4} Ultimately, Spectrum became interested in leasing office space in the Van Roy Coffee Building ("the Van Roy building"), located at 2900 Detroit Avenue in Cleveland. There is a factual dispute as to whether this building was among the properties submitted to Spectrum by Daus. Daus argued that the property was on the initial listing of properties prepared for Spectrum and was included on a tour report. Garson testified in his deposition that he drove by the building with Stephen Morse, the president and CEO of Spectrum, while out touring properties on October 28, 2003. At the time, Spectrum was focused on purchasing a building, and the Van Roy building was listed only for lease. Morse stated in his deposition that he became aware of the space during a conversation with Helen Jones, the director of an organization called Recovery Resources. Morse claimed that Jones informed him that her organization was leasing the first two floors of the Van Roy building, and she suggested that Morse contact the owner of the building, Michael Chesler, to take a look at the *Page 5 
third floor of that building.
 {¶ 5} In mid-February 2004, Morse contacted Chesler regarding the availability of the Van Roy building. Thereafter, Morse contacted Garson and informed him that he, Morse, had made an appointment to view the building. Garson, who was attending a conference at the time, told Morse to go ahead and look at the building and that they could "take that up" when Garson got back.
 {¶ 6} At the first meeting with Chesler, Morse informed Chesler that Garson was Spectrum's exclusive agent. Chesler's response was that he did not involve brokers in his deals. Morse relayed this to Garson.
 {¶ 7} Garson stated that he informed Morse that if the building worked for Spectrum, they could work out an arrangement by which Garson would get paid directly by Spectrum or the payment would be incorporated into the lease. Garson also informed Morse that it was all right for Morse to negotiate directly with Chesler. Garson proceeded to conduct comparisons of the potential Van Roy building lease on behalf of Spectrum and to otherwise perform under the Agency Agreement.
 {¶ 8} On May 20, 2004, Garson sent a letter to Morse outlining the history of their relationship. In the letter, Garson reiterated his position that it would be inappropriate for Spectrum to enter into a lease agreement without a fee being paid to Daus pursuant to the exclusive Agency Agreement. He also indicated that if Chesler refused to pay a fee, it would be necessary for Spectrum to pay Daus directly should a lease be consummated for the Van Roy building. In the letter, Garson also stated that the Van Roy building was included in the *Page 6 
buildings he and Morse drove by and discussed during their first tour. At the end of the letter, Garson indicated that if Morse felt Garson had stated anything inaccurately, Morse should contact Garson immediately. Morse conceded during his deposition that he had no recollection of calling Garson immediately upon receiving said letter.
 {¶ 9} Garson unequivocally stated that he expected he would be paid his fees and his commission, that Morse was informed of this, and that he had subsequent conversations with Morse during which Morse indicated the Spectrum board had approved the payment of a commission to Daus. The record contains exhibits that support this position of the Spectrum board. Further, Morse confirmed in his deposition that the Spectrum board had discussed the idea that Garson would expect a commission and had authorized Morse to negotiate a settlement of any claim for commission.
 {¶ 10} On June 2, 2004, Morse gave Garson a letter of cancellation of the Agency Agreement between Daus and Spectrum. The next day, Spectrum executed a lease for the Van Roy building. No commission was paid to Daus.
 {¶ 11} Daus filed this action raising claims for breach of contract, quantum meruit, balance due on account, unjust enrichment, and fraud. Daus also filed a motion for summary judgment solely on its count for breach of contract. Spectrum filed a motion for summary judgment on all counts. The trial court denied Daus' motion, granted Spectrum's motion, and granted final judgment in favor of Spectrum. Daus has appealed.
 {¶ 12} Daus raises two assignments of error for our review. These assignments argue, respectively, that the trial court erred by (1) granting Spectrum's motion for summary *Page 7 
judgment and granting Spectrum judgment as a matter of law, and (2) denying Daus' motion for summary judgment on the breach of contract claim.
 {¶ 13} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga Cty. Comm. College, 150 Ohio App.3d 169,2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Dussell v. Lakewood PoliceDepartment, 99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, citing State exrel. Duganitz v. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191, 1996-Ohio-326.
 {¶ 14} A review of this matter reflects that there are clear factual disputes that remain to be litigated. Pursuant to the terms of the Agency Agreement, Spectrum was to have no liability or obligation to pay Daus any fees or commissions "except as agreed to hereunder." Daus agreed instead to look solely to the owner of the property that Spectrum purchased or leased for payment of its fees or commission. However, in this case, the owner of the Van Roy building was unwilling to involve or pay a broker in the transaction. According to the Agency Agreement, Spectrum agreed not to enter into an agreement with an owner or lessor who had not entered into an acceptable written commission agreement with Daus.
 {¶ 15} Spectrum claims that it had no obligation to pay Daus a commission pursuant to the Agency Agreement. It also claims that Daus waived the requirement that Spectrum not *Page 8 
enter into a lease agreement with an owner/lessor who had not entered a commission agreement with Daus because Garson repeatedly indicated he would not stand in the way and gave Morse permission to negotiate the lease without him. Spectrum states that it relied on these representations when entering into the lease for the Van Roy building.
 {¶ 16} Spectrum, however, ignores the evidence in the record that reflects Garson also conditioned this representation by stating he expected to get paid by Spectrum directly. It appears that Spectrum was aware of this expectation, as Spectrum's board approved the payment of a commission to Daus. Indeed, the record reflects that both parties acknowledged the exclusive agency relationship, and Spectrum anticipated that Garson expected he would be paid his fees and a commission upon the Van Roy lease.
 {¶ 17} Spectrum terminated the Agency Agreement on June 2, 2004, prior to the expiration of one year, and the very next day entered into a lease agreement for the Van Roy building. The Agency Agreement provided that in the event of cancellation, Spectrum was to "protect [Daus'] right to receive a commission should [Spectrum] enter into a purchase or lease agreement for a property submitted by [Daus] during the term of his agency." There is a factual dispute in the record as to whether the Van Roy building was a property submitted by Daus. Daus claimed the property was on its initial listing of properties presented to Spectrum, was on a tour report, and was shown to Morse, via a drive-by, while Morse was being shown buildings by Garson. Morse claimed he learned of the property during a conversation with the director of another business that also leased space in the Van Roy building. *Page 9 
 {¶ 18} There is also a material dispute of fact as to whether Spectrum fraudulently misrepresented to Daus that Daus' right to a commission would be protected by Spectrum. Garson stated that in several conversations with Morse, Morse committed to stand behind the Agency Agreement and represented that payment of the fee would be made to Daus for its work as Spectrum's exclusive agent. In apparent reliance on these representations, Daus continued to perform work for Spectrum under the Agency Agreement, including the preparation of comparisons involving the Van Roy building.
 {¶ 19} With respect to Daus' claim that it was entitled to summary judgment on the breach of contract claim, Daus argues that Spectrum breached the agreement (1) by failing to conduct all negotiations through Daus, (2) by entering a lease with a lessor who had not entered into an acceptable written commission agreement with Daus, and (3) by not protecting Daus' right to receive a commission after unilaterally cancelling the Agency Agreement. Here again, the record contains genuine issues of material fact.
 {¶ 20} The argument that Spectrum breached the agreement by failing to conduct all negotiations through Daus fails. The record clearly reflects that Garson authorized Morse to conduct negotiations directly with Chesler, who refused to deal with any brokers.
 {¶ 21} Nonetheless, there are a number of material issues of fact that remain in dispute pertaining to whether Spectrum breached the Agency Agreement in other respects. Although the Agency Agreement required Daus to look to the owner or lessor of the leased building for the payment of its fees and commission, there is a factual dispute as to whether the parties' conduct modified, waived, or conditionally waived the contract terms and whether Spectrum *Page 10 
became obligated for this payment.
 {¶ 22} Issues also exist with respect to Spectrum's cancellation of the Agency Agreement. Spectrum cancelled the agreement after its purported acquiescence to the payment of fees and a commission to Daus. Further, the Agency Agreement required Spectrum to protect Daus' right to receive a commission in the event of cancellation. There is a factual dispute as to whether the Van Roy building was submitted by Daus.
 {¶ 23} For the foregoing reasons, we find that the trial court properly denied Daus' motion for summary judgment, but erred in granting Spectrum's motion for summary judgment. Daus' first assignment of error is sustained, and its second assignment of error is overruled.
 {¶ 24} Judgment affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings.
It is ordered that appellant and appellee share costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and *Page 11 
MARY J. BOYLE, J., CONCUR *Page 1