[Cite as *Mowery v. Ohio State Univ. Med. Ctr.*, 2012-Ohio-1246.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RODNEY MOWERY

    Plaintiff

    v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER

    Defendant

Case No. 2010-08705

Judge Clark B. Weaver Sr.

DECISION

{¶1} Plaintiff brought this action alleging interference with his rights under the Family and Medical Leave Act of 1993 (FMLA), as well as disability discrimination under R.C. 4112.02.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} On October 15, 2007, plaintiff began working as a registered nurse (R.N.) on the surgical floor of West Rhodes at The Ohio State University Medical Center (OSU). Plaintiff's duties included providing patient care, performing patient assessments, ensuring patient stability and otherwise providing for the patient's needs. Generally, plaintiff would care for five or six patients during his 12 hour shifts. Plaintiff testified that on June 15, 2009, his daughter disappeared and has not been found since. Plaintiff stated that as a result, he became depressed, causing him to lose sleep and become very fatigued. Plaintiff testified that he inquired about receiving FMLA coverage in the

---

[1]On July 11, 2011, plaintiff filed an amended complaint eliminating plaintiff's claims based upon gender, hostile work environment, and disparate treatment.

summer of 2009 but did not seek physician approval or request FMLA coverage for depression at that time.

{¶3} On December 17, 2009, Kristie Henneman, Human Resources Consultant, notified plaintiff that Mary Lou Hauenstein, Nurse Manager, had requested "corrective action" as a result of plaintiff's "neglect of duty." (Defendant's Exhibit H-7.) A hearing was scheduled for December 30, 2009. On December 29, 2009, plaintiff sought medical treatment from his physician for his depression and fatigue. At the hearing, plaintiff presented an "OSU Medical Certification Statement" completed by his physician indicating that plaintiff would require "intermittent time off" as a result of his condition. (Defendant's Exhibit D-5.) The form also stated that plaintiff "[i]s medically unable to perform work from 11-9-09 through 3-8-10." On January 20, 2010, defendant requested additional information about plaintiff's condition and symptoms. (Defendant's Exhibit D-4.) Pursuant to defendant's request, on February 8, 2010, plaintiff provided a "Medical Certification of Health Care Provider for Employee's Serious Health Condition" indicating that plaintiff's condition commenced on November 9, 2009, and would likely end on April 5, 2010. The form also indicated that plaintiff may require time off at either the beginning of his shift or at the end of his shift. The form was approved when defendant issued the February 22, 2010 "Designation Notice." In the designation notice, nurse manager Katie Huth wrote "[p]lease note when using FMLA, you must notify department by call off times and complete application for leave form indicating usage of FMLA." (Defendant's Exhibit D-2).[2] Plaintiff signed the designation notice on February 26, 2010.

{¶4} According to plaintiff's attendance summary, between January and May 2010, plaintiff was tardy eight times, received FMLA coverage on two other occasions, was ill twice, and used ten edit slips. Huth testified that edit slips are not to be used for

FMLA coverage and are generally used to alter an employee's time when an employee forgets to clock in or does not take a lunch break. Employees are not to exceed eight edit slips in any six month period. Plaintiff was marked tardy on January 22, February 11, March 19, March 25, March 26, April 2, April 16, and May 1, 2010. (Plaintiff's Exhibit 7.) Plaintiff testified that he immediately called the charge nurse at OSU as soon as he knew he would not be able to arrive to work on time for each instance of tardiness. According to plaintiff, he called the charge nurse on January 15, February 11, February 24, March 15, March 25, March 26, and April 2, 2010; however, he was unable to recall with whom he spoke or the time the phone calls were made. Plaintiff also asserts that he completed an application for leave every time that he was tardy. Of the instances of tardiness that plaintiff alleges should be covered by the FMLA, defendant marked plaintiff tardy on February 11, March 25, March 26, and April 2, 2010.

{¶5} On May 18, 2010, Henneman notified plaintiff that Huth had requested corrective action be taken for his "Neglect of Duty, Inappropriate Conduct and Unsatisfactory Attendance." (Plaintiff's Exhibit 8.) A corrective action hearing was held on May 26, 2010, and it was subsequently determined that plaintiff had "demonstrated Neglect of Duty, Inappropriate Conduct and Unsatisfactory Attendance." (Plaintiff's Exhibit 9.) Plaintiff's employment was terminated on June 16, 2010.

{¶6} Plaintiff argues that defendant violated his FMLA rights by counting tardiness against him on occasions where such tardiness should have been covered under the FMLA, and then using those instances as the basis for his termination. Plaintiff further asserts that defendant discriminated against him in violation of R.C. 4112.02 by failing to accommodate his disability. Defendant argues that plaintiff was discharged for reasons unrelated to his FMLA leave and that he failed to follow OSU's

---

[2]Katie Huth began working as the nurse manager in February 2010. Huth replaced interim nurse manager Lindsey Holstien who had replaced Hauenstein approximately one month earlier.

policies and procedures in requesting FMLA leave. Defendant further argues that it reasonably accommodated plaintiff's condition.

## INTERFERENCE WITH FMLA RIGHTS

{¶7} "The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.* (C.A.6, 2005), 424 F.3d 481, 485, quoting 29 U.S.C. 2612(a)(1)(D). FMLA leave may be taken by an eligible employee with a serious health condition "intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. 2612(b)(1).

{¶8} In order for an employee to establish that an employer interfered with his rights under the FMLA, the employee must show that: "(1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled." *Walton*, supra.

{¶9} "When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. 825.303(a). "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. * * * When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required

information through informal means." 29 C.F.R. 825.303(b). "[A]n employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number of a specific individual to request leave. * * * If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. 825.303(c).[3]

{¶10} The parties do not dispute that plaintiff was an eligible employee, that defendant was a covered employer, and that plaintiff was entitled to take intermittent FMLA leave for his depression. The parties disagree whether plaintiff gave timely notice of his intention to take leave on certain dates and whether defendant denied plaintiff FMLA benefits to which he was entitled.

{¶11} Plaintiff testified that he telephoned the charge nurse on duty as soon as he realized that he was going to be late because of his depression. Plaintiff explained that such a realization usually occurred when he would wake up after a restless sleep shortly before his shift would begin. Plaintiff also asserted that he completed the required forms every time his depression caused him to lose sleep and be late for work.

{¶12} Jody Robbins, R.N., who periodically served as a charge nurse, testified that a charge nurse performs the same duties as the other R.N.s and is also responsible for staffing assignments. Robbins stated that when a nurse was not coming in or would be coming in late, the nurse was required to call the charge nurse in advance, who would then record the information on the back of the daily assignment sheets.[4] According to Robbins, the charge nurse would not know who was eligible for FMLA

---

[3]Former 29 C.F.R. 825.303 was amended on November 17, 2008, and the revised version became effective January 16, 2009.

[4]The daily assignment sheets were not introduced into evidence at trial. Counsel for plaintiff asserts in his closing argument that such assignment sheets were not produced in discovery despite

unless the nurse who was calling in personally informed her. Robbins testified that plaintiff would not call in late to the charge nurse and instead would simply show up late. Charge nurse Kandy Sollars also testified that any nurse who is late or absent is required to call the charge nurse in advance and that the charge nurse must record the information on the back of the daily assignment sheets. Sollars testified that plaintiff generally would not call in and would usually just show up late. Sollars stated that she recalled one instance where plaintiff called in to request FMLA leave in order to meet with an attorney. Sollars confirmed that a charge nurse would not know whether an employee was eligible for FMLA leave unless the employee said so during the conversation.

{¶13} Henneman testified that in order to receive FMLA coverage for tardiness, a nurse was required by defendant's policies to call the charge nurse three hours prior to his shift, and to subsequently complete a written application for leave. Henneman stated that the three-hour policy is subject to a reasonableness standard and that it was adopted for reasons other than FMLA notification. According to Henneman, the three-hour policy is designed to ensure the proper staffing levels for patient care. Henneman stated that she would not expect the employee to state the reason for being tardy in the phone call to the charge nurse. Henneman testified that FMLA leave forms are to be turned in to the nurse manager.

{¶14} Plaintiff submitted applications for leave for January 15, February 4, February 24, and March 4, 2010. Although plaintiff testified that he submitted applications for leave for every instance of tardiness, he was unable to produce copies of applications for January 22, February 11, March 19, March 25, March 26, April 2, April 16, and May 1, 2010. Plaintiff did request FMLA leave for January 15 and February 24, 2010, and his requests were approved. Plaintiff's February 4, 2010

being responsive to plaintiff's discovery request; however, no motion to compel such discovery was

application for leave due to sickness was also approved.  Plaintiff submitted two applications for leave for March 4, 2010.  The first application is for 12 hours of leave pursuant to FMLA.  There is no indication whether  such request was approved. (Defendant's Exhibit B-6.)  The second application requested 12 hours of leave due to fever and nausea, and it is marked "approved" and is designated as "ill time," rather than FMLA. (Defendant's Exhibit B-7.)

{¶15} Huth testified that a search of defendant's records reveals that plaintiff did not submit leave applications for January 22, February 11, March 19, March 25, March 26, and April 2, 2010.  According to Huth, the three-hour call off policy was for attendance purposes only, and plaintiff was never denied FMLA coverage for failing to strictly adhere to the policy.

{¶16} Hauenstein testified that plaintiff struggled with tardiness issues while she was the nurse manager.  Hauenstein explained that eight or more instances in a six month period may lead to corrective action, or discipline.  Hauenstein stated that an employee's attendance record was considered to be part of an employee's annual performance review.  According to plaintiff's first performance review, plaintiff was tardy 49 times during his first 12 months at OSU, well beyond the limit of eight for each six month period.  (Defendant's Exhibit E-2.)  Hauenstein testified that plaintiff's attendance problems did not improve after his first employee performance review.  Indeed, plaintiff was repeatedly disciplined for his attendance issues.  He received reprimands for his attendance issues on April 7, 2008, July 22, 2008, July 8, 2009, and July 31, 2009.  On December 12, 2009, Hauenstein requested corrective action regarding plaintiff's attendance and performance issues.  The request notes that plaintiff has been tardy 14 times in the previous six months.  (Defendant's Exhibit H-9.)  Plaintiff's performance review dated October 8, 2009, notes that plaintiff was tardy 41 times between October

made.

2008 and October 2009.  According to the May 13, 2010 "Corrective Action Request," Huth sought to discipline plaintiff because of incomplete documentation, violation of safety protocols, conduct unbecoming of an OSU employee, poor attendance, and exceeding the edit slip threshold.  (Defendant's Exhibit H-3.)  As a result, plaintiff's employment was terminated on June 16, 2010.

{¶17} The court concludes that plaintiff did not request FMLA leave on January 22, February 11, March 19, March 25, March 26, and April 2, 2010.  The court finds that plaintiff neither called the charge nurse nor completed the applications for leave to request FMLA coverage of his tardiness.  Indeed, the court is persuaded by the testimony of charge nurses Robbins and Sollars who testified credibly that plaintiff failed to call the charge nurse prior to arriving late for his shift.  Furthermore, plaintiff's testimony that he called the charge nurse every time he was going to be tardy and that he completed the applications for leave in every instance is not credible.  Indeed, plaintiff's testimony made no mention of two of the dates that he was marked tardy, January 22 and March 19, 2010, and included a date on which he was not tardy, March 15, 2010.  Plaintiff failed to produce copies of applications for leave he claims to have submitted and failed to provide any evidence corroborating his claims that he called the charge nurse whenever he wished to use FMLA coverage.  Accordingly, plaintiff has not proven his FMLA interference claim by a preponderance of the evidence.

**DISABILITY DISCRIMINATION**

{¶18} R.C. 4112.02 states, in part:

{¶19} "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶20} In similar fashion, the Americans with Disabilities Act (ADA) provides, at 42 U.S.C. 12112(a):

{¶21} "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

{¶22} The Rehabilitation Act, which prohibits discrimination against the disabled in federally funded programs, provides at 29 U.S.C. 794(a):

{¶23} "No otherwise qualified individual with a disability in the United States * * * shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *."

{¶24} To establish a prima facie case of discrimination under the ADA or Rehabilitation Act, plaintiff must demonstrate "that [he is or is] perceived to be handicapped within the definitions of each of the acts, that [he is] otherwise qualified for the job, and that [he was] discriminated against on the basis of [his] disability." *Andrews v. State of Ohio* (C.A.6, 1997), 104 F.3d 803, 807. Under the Rehabilitation Act, a plaintiff must also demonstrate that the defendant receives federal funds. Id.

{¶25} "To establish a prima facie case of handicap discrimination [under R.C. 4112.02], the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571, 1998-Ohio-410.

{¶26} Given the similarity between the ADA, the Rehabilitation Act, and Ohio law regarding disability discrimination, the analysis of such claims is essentially the same.

See *Andrews*, supra; *Cox v. True N. Energy, LLC* (N.D.Ohio 2007), 524 F.Supp.2d 927, 943; *Canady v. Rekau & Rekau, Inc.*, Franklin App. No. 09AP-32, 2009-Ohio-4974, ¶32.

{¶27} For his prima facie case, plaintiff alleges that: 1) his depression constituted a disability; 2) he could have performed the essential functions of his job if defendant had accommodated his request for FMLA leave; and 3) he suffered an adverse employment action when he was terminated.

{¶28} With respect to the first element of plaintiff's prima facie case, 42 U.S.C. 12102(1) defines "disability" for purposes of the ADA as:

{¶29} "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

{¶30} "(B) a record of such an impairment; or

{¶31} "(C) being regarded as having such an impairment * * *."

{¶32} Plaintiff contends that his depression substantially limited one or more of his major life activities, thus constituting a disability. "When determining whether an individual is substantially limited in performing a major life activity, courts should consider three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment." *Novak v. MetroHealth Med. Ctr.* (C.A.6, 2007), 503 F.3d 572, 581, citing 29 C.F.R. 1630.2(j)(2).

{¶33} Assuming plaintiff was "disabled" for purposes of the ADA, the court turns to the third prima facie element where "[b]oth federal and Ohio law impose a duty on employers to make reasonable accommodations for their employees with disabilities." *Rector v. Ohio Bur. of Workers' Comp.*, Franklin App. No. 09AP-812, 2010-Ohio-2104, ¶12. "[T]he duty of an employer to make a reasonable accommodation also mandates that the employer interact with an employee in a good faith effort to seek a reasonable accommodation." *Shaver v. Wolske & Blue* (2000), 138 Ohio App.3d 653, 664.

{¶34} "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Id. An employer shows a good-faith attempt to comply when the employer meets with the employee, requests information about the conditions and limitations, and asks what accommodation is being sought. Id. at 669.

{¶35} Plaintiff requested and received FMLA leave for his depression on an intermittent basis. When plaintiff's FMLA leave was approved, defendant informed plaintiff that he needed to telephone the charge nurse on the days that he would be tardy and that he needed to complete the applications for leave. Additionally, Huth testified that plaintiff was never denied FMLA coverage for failure to adhere to defendant's three-hour call off policy. "Honoring an employee's * * * FMLA leave request, where [his] physician has recommended the leave for the beneficial effect it might have on the employee's long-term ability to function properly at work, can be a reasonable accommodation itself * * *." *Swanson v. Senior Resource Connection* (S.D.Ohio 2003), 254 F.Supp.2d 945, 961. However, the court has found that plaintiff did not telephone the charge nurse on the days when he was tardy nor did plaintiff complete the required applications for FMLA leave. The court finds that defendant acted in good faith when making the modest request that plaintiff telephone a charge nurse and submit an application for leave as a condition for using FMLA leave. Therefore, plaintiff has failed to prove his claim of disability discrimination.

{¶36} For the foregoing reasons, the court finds that plaintiff failed to prove any of his claims by a preponderance of the evidence. Accordingly, judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RODNEY MOWERY

   Plaintiff

   v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER

   Defendant

Case No. 2010-08705

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

   {¶37} This case was tried to the court on the issue of liability.  The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant.  Court costs are assessed against plaintiff.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Gary A. Reeve
513 East Rich Street, Suite 308
Columbus, Ohio 43215

Kristin S. Boggs
Peter E. DeMarco
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

GWP/dms
Filed January 19, 2012
To S.C. reporter March 23, 2012